**Donald Dee COLLIER, Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.**

No. 73–1543.

United States Court of Appeals, Fifth Circuit.

Jan. 31, 1974.

Patricia E. Abbitt, Dallas, Tex. (Court-appointed), for petitioner-appellant.

John L. Hill, Atty. Gen., E. Bruce Curry, Asst. Atty. Gen., Joe B. Dibrell, Austin, Tex., for respondent-appellee.

Before TUTTLE, GEWIN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

█ This 2253 appeal,[1] taken from an order denying a petition for a writ of

1. 28 U.S.C. § 2253 (1970).

habeas corpus, presents the question of whether appellant, Donald Collier, was denied his constitutional right to appeal by the failure of the state court to afford him appointed counsel on appeal. Critical to the resolution of this question is a subsidiary issue of whether appellant waived this right, irrespective of any dereliction on the part of the state. Since the district court refrained from addressing these questions, we vacate its order and remand for an evidentiary hearing to illuminate the viability of Collier's grievances.

I

Because of the unique posture in which the purported denial of a right to appeal is presented, it is instructive to recount the course of the proceedings in the state trial and post conviction relief courts and in the federal district court. Appellant was indicted in 1968 for robbery by firearms. At the trial, his retained counsel interposed both an "insanity defense"[2] and a plea of not guilty. Following adverse determinations by the same jury on both contentions, Collier, through his counsel, gave notice of appeal in open court. Within two months, however, his attorney filed a motion to dismiss the appeal, to which the trial court responded favorably. Since the motion stated as grounds therefor only that Collier did "not want his appeal heard before the Court," the trial court was ignorant of the subsequently revealed and allegedly true reason for filing the motion to dismiss, namely, Collier's inability to afford retained counsel on appeal.

Disheartened by the prospect of twenty years of incarceration, Collier sought vindication of his rights by pressing forward without the aid of counsel. Approximately eight months after his counsel had moved to dismiss his appeal, and hence after the time allowed for perfecting an appeal from his conviction had expired, he attempted to obtain a copy of the trial transcript from the district clerk of the court in which he was convicted. While the clerk maintained that he had honored Collier's request at no cost because Collier had filed an affidavit of inability to pay, his efforts apparently went awry for Collier failed to obtain a copy of the record. Undaunted by this failure, Collier pressed the district clerk for information concerning the cost of the "statement of facts", again to no avail. A third request was similarly inefficacious.

Abandoning this tact, Collier filed a petition for a writ of habeas corpus in the district court of Lubbock County, Texas, alleging that the trial court erred in employing the same jury to try his "insanity" and his guilt or innocence, and that the admission of a prior forgery conviction at the insanity hearing and the reception of evidence concerning narcotics at the trial on the merits jeopardized his right to a fair trial. The state district court denied the writ of habeas corpus, holding that by dismissing his appeal, Collier waived any error in his trial. The Texas Court of Criminal Appeals affirmed the denial without hearing or opinion. It results, therefore, that the issue of waiver of the right to appeal was injected into the case by the state court. That fact is critical because the waiver determination was used to eliminate all of Collier's claims to post conviction relief.

Subsequently, Collier filed an application for a writ of habeas corpus in federal district court, from the denial of

2. Appellant's characterization of his first contention—that separate juries should be required to try the insanity issue and his guilt —is somewhat misleading. A careful reading of his Second Motion for Continuance, his Motion for Perliminary Hearing, and his proposed jury charge requested of the court reveal that he did not claim insanity at the time the offense was committed but rather incompetency to stand trial. We regret that the distinction between the two which plagued the court in Bruce v. Estelle, 483 F.2d 1031 (5th Cir. 1973) still remains elusive.

which this appeal is taken. Despite the absence of a transcript of the proceedings in the state convicting court, the district court denied the writ, holding that the alleged evidentiary errors committed and the failure to conduct bifurcated jury trials on insanity and guilt or innocence did not implicate any constitutional proscriptions.

## II

Although neither the state nor the federal habeas corpus petitions are bottomed upon the denial of a right to appeal, it is upon the resolution of this issue that Collier's fate hinges.[3] Through appellate counsel's legerity, the use of the waiver issue by the state court to deny consideration of Collier's claims, and the absence of any evidence that he actually waived his right of appeal, the habeas petitions have in effect been transformed to incorporate this contention. In these circumstances we need not have any reservations about considering the waiver issue in this unorthodox posture.[4]

■■ It is beyond cavil that a criminal defendant cannot be denied an appeal because of indigency or ignorance. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Schwander v. United States, 386 F.2d 20 (5th Cir. 1967); Crawford v. Beto, 383 F.2d 604 (5th Cir. 1967). Nevertheless, a state court, unlike its federal counterpart, is not required to apprise a defendant of his right to appeal or to appoint him counsel for the purpose of pursuing an appeal where that court is not aware of his desire to do so. Giles v. Beto, 437 F.2d 192, 194 (5th Cir. 1971); cf. Beto v. Martin, 396 F.2d 432, 434 (5th Cir. 1968); Worts v. Dutton, 395 F.2d 341, 344 (5th Cir. 1968). Since Collier was represented by retained counsel in the state court who moved to dismiss his previously filed notice of appeal, a denial of a right to appeal could be established only by evidence that the state trial court or some responsible state official was or should have been cognizant of both his desire to appeal and his inability to afford to do so with retained counsel at some point after his motion to

---

3. Filed without the aid of the skillful counsel who represented him on this appeal, Collier's habeas petition does not advert to either of the claims upon which this case is presently being considered. In his application for the writ, Collier listed the following grounds: "Judgment and conviction, violates the Fifth (5th), Sixth (6th) and Due Process of Law, and Equal Protection of Laws, Clauses of the Fourteenth (14th) Amendment to the United States Constitution." He designated the following facts as supportive of the above grounds: "Petitioner, did not testify, in his own behalf at any part of A two (2) part jury trial, on a insanity trial and criminal trial by same jury, who was informed of petitioners past criminal record, plus merry [sic] accusations of crimes, Denying Petitioners [sic] Rights to a fair trial by an impartial jury."

Were we not inclined to presently view his habeas petition as containing a claim of denial of a right to appeal, then we would characterize Collier's failure to appeal from his state court conviction as presenting a deliberate bypass issue under Fay v. Noia,

372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). See, e. g., Montgomery v. Hopper, 488 F.2d 877 (5th Cir. 1973). In Hopper, this court announced that "[n]ot even an outright failure to file an appeal would, of itself, constitute a deliberate bypass in the absence of clear proof that the decision not to appeal was made knowingly and understandingly in order to secure some benefit to the petitioner." Application of this deliberate bypass standard at the evidentiary hearing below would produce substantially the same result as application of the standard we have articulated.

4. Since the claimed right to court appointed counsel is subsumed with the alleged denial of a right to appeal, it is only by a wooden application of exhaustion requirements that Collier's contentions could be denied consideration by this court. Cognizant of the fact that Collier proceeded without counsel in the state habeas court, and desirous of terminating his protracted efforts to seek vindication, we refrain from indulging in such an application.

dismiss the appeal was filed. *See* Johnson v. Wainwright, 456 F.2d 1200, 1201 (5th Cir. 1972); Gregory v. United States, 446 F.2d 498, 499–500 (5th Cir. 1971); Horsley v. Simpson, 400 F.2d 708, 711–712 (5th Cir. 1968); Beto v. Martin, 396 F.2d 432, 434 (5th Cir. 1968).

Collier's persistent requests to obtain a copy of the trial transcript from the district clerk, one of which was accompanied by an affidavit of inability to pay, would at first blush bring this case within the above mentioned standards. *Compare* Horsley v. Simpson, *supra* 400 F.2d at 712 (inquiry made to clerk of court of appeals concerning status of his appeal) *with* Beto v. Martin, *supra* 396 F.2d at 434 (Texas Court of Criminal Appeals was advised of defendant's indigency by letter, three months after conviction). Upon careful reflection, however, it is clear that this case differs substantially from those in which the standards governing a denial of a right to appeal were enunciated. For here, unlike Horsley v. Simpson and Beto v. Martin, for example, Collier, though evidencing his desire to appeal by filing a notice of appeal within the requisite statutory period, apprised state officials of his indigency after the time for appealing had expired. Hence, two competing factors are injected into our decision. On the one hand, we cannot countenance the view that defendants can brazenly ignore legitimate state imposed temporal limitations on filing an appeal.[5] On the other hand, however, we cannot subscribe to the view that by *belatedly* informing responsible state officials of his indigency and reiterating his desire to appeal that Collier had forsaken his fundamental right to do so. Reconciliation of these two factors lies in a waiver standard. We now proceed to explicate this standard and apply it to the instant case.

 If the gravamen of Collier's complaint were confined to a denial of court appointed counsel, the applicable standard governing waiver would be that articulated in Craig v. Beto, 458 F. 2d 1131, 1136 (5th Cir. 1972) where the court stated that "[i]f Craig did not know about his right to appointed counsel and was not advised of that right, then there could not possibly be an intentional relinquishment or waiver of that right." Since Collier's denial of a right to appeal contention is inextricably tied to his claimed denial of a right to counsel on appeal, this same standard governs the waiver issue prescribed herein. As was noted above, the motion to dismiss the appeal stated only that Collier did "not want his appeal heard before the Court." The State of Texas did not introduce any testimony or correspondence exchanged between appellant and his trial counsel which indicates that appellant either suggested, acquiesced in or concurred with the decision to dismiss the appeal. Nor is there any evidence which suggests that Collier was informed that upon his proof of indigency, the state would provide him with counsel to prosecute an appeal. Waiver of the fundamental right to appeal requires knowing and intelligent participation *cf.* Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, 868–869 (1973). Such a view is mindful of the decision in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963) where in adumbrating the waiver standard, the Supreme Court announced that "[a] choice made by counsel not participated in by the petitioner does not automatically bar relief" and that "the standard here put forth depends on the *considered choice of the*

---

5. This case differs from others in which a denial of a right to appeal is claimed in that the actions of Collier which satisfy the standards enunciated in the text were taken after the time for perfecting an appeal had expired and after he had moved to dismiss the notice of appeal given at the time of his sentencing. Had no notice of appeal been given, the relevant temporal index would be the time when by statute he could no longer file a notice of appeal.

*petitioner."* 372 U.S. at 439, 83 S.Ct. at 849, 9 L.Ed.2d at 869 (emphasis added).

Since the record fails to disclose that Collier did in fact knowingly and intelligently waive his fundamental right to appeal, our only recourse is to remand this case to the district court for an evidentiary hearing on the waiver issue. And, if at this hearing, the state cannot adduce evidence of the aforementioned nature which demonstrates that the decision to file the motion to dismiss the appeal was the product of Collier's considered choice, it will be incumbent upon the district court to conclude that a waiver was not effected.

### III

Where such a waiver is not established and there is no impediment to granting an out of time appeal, federal courts will usually grant the writ, ordering the State to afford a defendant either the out of time appeal, *see, e. g.,* Horsley v. Simpson, *supra* 400 F.2d at 712–13; Beto v. Martin, *supra* 396 F.2d at 433; LeMaster v. Beto, 387 F.2d 612, 613 (5th Cir. 1967); Schwander v. United States, *supra* 386 F.2d at 25, or a release from confinement. However, even with court appointed counsel, Collier would encounter the same difficulty in an out of time appeal that he complains of in his habeas petition—namely the unavailability of a transcript or "statement of facts" from the state trial court impairs his ability to amplify his allegations of a denial of a right..to a fair trial.[6] Our unwillingness to condone the practice of disposing of due process claims where, through no fault of a criminal defendant, a record if absent is buttressed by the fact that Texas Code of Criminal Procedure, Art. 40.09,

§ 5 (Supp.1972–73) precludes appellate review of an assigned error in the brief without a transcription of the court reporter's notes, *see* Smith v. State, 430 S.W.2d 496, 497 (Tex.Cr.App.1968); Trevino v. State, 409 S.W.2d 853, 854 (Tex.Cr.App.1966); Isaacs v. State, 403 S.W.2d 409 (Tex.Cr.App.1966), and entitles a criminal defendant to a new trial. *See* Ex Parte Ramirez, 483 S.W.2d 259, 260 (Tex.Cr.App.1972); Ex Parte Perez, 479 S.W.2d 283, 285 (Tex.Cr.App.1972); Ex Parte Marshall, 445 S.W.2d 212, 213 (Tex.Cr.App.1969).

The wisdom of this course is confirmed by the fact that a new trial will largely mute the grievances which Collier proffers in his habeas petition and hence terminate the protracted proceedings spawned by his state trial. The statutory provision pursuant to which the same jury tried both insanity and his guilt or innocence has been superseded by Texas Code of Criminal Procedure, Art. 46.02, § 1 (Supp.1972–73) which prescribes a bifurcated trial for such issues. Trial under this provision would obviate the need to consider both the first grievance pressed in Collier's original petition and the second, which for all intents and purposes, is subsumed within the first. Presumably, the trial court could exclude evidence of narcotics offenses to which Collier allegedly had no relation, and hence foreclose any need to consider his third contention.

To reiterate we only hold that there must be an evidentiary hearing in the United States District Court to resolve the waiver issue. Appropriate disposition of the case will depend upon the findings of that court after such a hearing.

Vacated and remanded.

---

6. Judge Pat S. Moore, who presided at Collier's state habeas hearing informed him by letter dated December 4, 1972, that the court reporter had died and no one knew where his records were. Consequently, Collier still cannot obtain a copy of the transcript.