STATE of Wisconsin EX REL. Robert FLORES, Petitioner,

v.

STATE of Wisconsin, Respondent.

Supreme Court

*No. 92–2114–W. Oral argument November 10, 1993.—Decided May 25, 1994.*

(Also reported in 516 N.W.2d 362.)

591

592

594

595

For the petitioner there were briefs by *Matthew H. Huppertz* and *Carlson & Huppertz, S.C.,* Waukesha and oral argument by *Matthew H. Huppertz.*

For the respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

Amicus curiae brief was filed by *Kenneth P. Casey,* Chief, Appellate Division, State Public Defender.

DAY, J. This case is before this court upon certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats., of a petition for writ of habeas corpus, claiming ineffective assistance of appellate counsel.

The following two questions were certified:

> **(1)** Is it ineffective assistance of appellate counsel for an appointed attorney to close a file without informing the defendant of the option of a no merit report?
>
> **(2)** If so, should such a rule be imposed prospectively only?

The first certified question posed by the court of appeals is actually two separate questions in practice: (1) was the defendant properly informed about his rights to appeal, including an explanation of the No Merit report option, provided by sec. (Rule) 809.32, Stats.?; (2) did defendant's appellate counsel withdraw improperly in violation of sec. (Rule) 809.32, Stats.?[1]

On the facts of this case, we conclude that there was no ineffective assistance of appellate counsel. Mr. Robert Flores was adequately informed of his rights of appeal and validly waived his appeal. Counsel's performance was not deficient; counsel did not withdraw improperly.

Since resolution of these issues does not involve the formulation of any new rules, the second question certified by the court of appeals need not be addressed. We do make some recommendations aimed at avoiding confusion over whether withdrawal of counsel is done properly, but we decline the invitation to formulate fixed and binding rules in this area at this time.

---

[1] Section (Rule) 809.32, Stats. (1991–1992) provides in relevant part:

**809.32 Rule (No merit reports). (1)** If an attorney appointed under s. 809.30 or ch. 977 is of the opinion that further appellate proceedings on behalf of the defendant would be frivolous and without any arguable merit within the meaning of Anders v. California, 386 U.S. 738 (1967), the attorney shall file with the court of appeals 3 copies of a brief in which is stated anything in the record that might arguably support the appeal and a discussion of why the issue lacks merit. The attorney shall serve a copy of the brief on the defendant and shall file a statement in the court of appeals that service has been made upon the defendant. The defendant may file a response to the brief within 30 days of service.

The relevant portions of sec. (Rule) 809.32, Stats. (1985–1986) are identical to the current version.

601

This case has a unique procedural history. Following a plea of no contest, Mr. Flores was convicted in November of 1985 of attempted first-degree murder while armed with a dangerous weapon. In the years following that conviction, Mr. Flores filed several *pro se* motions for post-conviction relief, citing sec. 974.06, Stats., and one petition for writ of habeas corpus. He raised a number of issues not pertinent here. However, it was not until almost four years after the deadline for direct appeal had passed, in the third of the three motions under 974.06, Stats., that Mr. Flores first alleged ineffective assistance of appellate counsel. Specifically, he alleged that his appellate counsel, Atty. Mary E. Waitrovich, First Assistant State Public Defender, Appellate Division, had abandoned his appeal and failed to file a No Merit report pursuant to sec. (Rule) 809.32, Stats.

In *State v. Flores,* 158 Wis. 2d 636, 462 N.W.2d 899 (1990) (Flores I), the court of appeals resolved the other allegations raised in Mr. Flores' latest sec. 974.06, Stats., motion, but remanded the ineffective assistance of appellate counsel claim to the trial court for an evidentiary hearing. That hearing was held in March of 1991. The case was returned to the court of appeals where, following this court's instructions in *State v. Knight,* 168 Wis. 2d 509, 519 n.6, 484 N.W.2d 540 (1992), the court of appeals construed Mr. Flores' latest sec. 974.06, Stats., motion as a petition for a writ of habeas corpus. *State v. Flores,* 170 Wis. 2d 272, 275, 278, 488 N.W.2d 116 (1992) *(Flores II).* Owing to an error during the first evidentiary hearing, a second evidentiary hearing was ordered, known as a "Machner hearing," to hear testimony on the ineffective assistance of appellate counsel claim. *See, State v. Machner,*

92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). This second hearing was held in September of 1992.

Based upon the testimony in this second evidentiary hearing, the appointed referee, Judge William R. Moser, concluded that there had been ineffective assistance of counsel. The record was sent back to the court of appeals which then sought certification to this court pursuant to sec. (Rule) 809.61, Stats., which was granted.

We conclude that Mr. Flores was adequately informed of his rights of appeal and validly waived his appeal. Counsel's performance was not deficient, and we further conclude that counsel did not withdraw improperly. The petition for the writ is denied.

The first issue in this case is whether Mr. Flores was properly informed about his rights to appeal, including an explanation of the No Merit report option, pursuant to sec. (Rule) 809.32, Stats.

Every convicted criminal defendant must be properly informed of the right to appeal. *See, Peterson v. State,* 54 Wis. 2d 370, 382, 195 N.W.2d 837 (1972); *Whitmore v. State,* 56 Wis. 2d 706, 718–720, 203 N.W.2d 56 (1973); *State v. Argiz,* 101 Wis. 2d 546, 561–562, 305 N.W.2d 124 (1981); and *United States ex rel. Singleton v. Woods,* 440 F.2d 835, 836 (7th Cir. 1971). The duty of informing a criminal defendant of the right to appeal is divided between the trial court and defendant's counsel. "[T]he trial court is obligated in all cases to inform the defendant of his right to appeal from the conviction—whether after a plea of guilty or after trial." *Peterson,* 54 Wis. 2d at 382. The information that should be given to criminal defendants regarding their appeal rights is contained in Wisconsin Jury Instructions—Criminal, Special

Materials 33 (SM–33). *Peterson,* 54 Wis. 2d at 382. In cases subsequent to *Peterson* this court has specified the manner in which this information should be conveyed. *See, Whitmore; Argiz.* A codification of procedures concerning the notice of rights to appeal and representation are contained in sec. 973.18, Stats. This court has also taken measures to ensure that criminal defendants are adequately represented from the point of sentencing through to prosecution of an appeal. *See, Whitmore.*

We note that all of these procedures were complied with in Mr. Flores' case. He does not dispute that he was properly informed of his right to appeal at the trial level.

Beyond these measures, however, much of the responsibility for properly informing a defendant about the rights of appeal must remain inevitably with defendant's post-conviction and appellate counsel. Thus, the right to be informed goes hand-in-hand with the right to be represented by counsel on appeal. The United States Supreme Court has held that the right to counsel is guaranteed on the first appeal as of right. *Douglas v. California,* 372 U.S. 353, 356–357, 83 S. Ct. 814 (1963); *Entsminger v. Iowa,* 386 U.S. 748, 751, 87 S. Ct. 1402 (1967).[2] This court has likewise ruled.[3] Under Wisconsin law, appellate counsel is appointed

---

[2] The states are not required to provide any particular form of appeal, but if appellate remedies are provided for those who can pay for it, an appeal must be provided for the indigent. *see, Griffin v. Illinois,* 351 U.S. 12, 18, 76 S. Ct. 585 (1956); *Jones v. Barnes,* 463 U.S. 745, 750–751, 103 S. Ct. 3308, 3312 (1983).

[3] The right to appeal from a criminal conviction is considered fundamental in Wisconsin. Article I, sec. 21 of the Wisconsin Constitution guarantees a criminal defendant in

for an indigent criminal defendant who has filed a notice of intent to pursue an appeal as of right from a conviction. *See,* sec. (Rule) 809.30(2)(b) and (e), Stats. The guarantee of counsel on appeals as of right includes the guarantee of effective assistance of counsel on appeal. *Evitts v. Lucey,* 469 U.S. 387, 396–397, 105 S. Ct. 830 (1985); *McMann v. Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441 (1970); *State v. Knight,* 168 Wis. 2d at 511–512.

Effective assistance of counsel in the present context means, first, that counsel must properly inform the defendant about the rights of appeal. The purpose of providing information on the rights of appeal is so criminal defendants may be able to make fully informed decisions about whether and how to exercise their rights of appeal. Failure to provide the relevant information to a client would constitute ineffective assistance of counsel.

A threshold question in this case is whether and when must a criminal defendant be informed of the option of a No Merit report under sec. (Rule) 809.32, Stats.

The option of a No Merit report is set forth in sec. (Rule) 809.32, Stats. *See,* footnote number 1, *supra.* The No Merit report option is available as part of the appeal as a matter of right. It is designed to cover those situations when the counsel appointed under sec. 809.30 or ch. 977 concludes that there would be no merit to a given criminal defendant's appeal and therefore seeks to withdraw from the defendant's case. The No Merit report option gives the criminal defendant

Wisconsin the right to a direct appeal from a conviction. *State v. Perry,* 136 Wis. 2d 92, 98, 401 N.W.2d 748 (1987).

the option to compel counsel to document why counsel is of the opinion that the appeal would have no merit. The defendant may then respond and the court of appeals will determine whether there is any merit to the appeal. *See, Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396 (1967); *St. ex rel. McCoy v. Appeals Ct.,* 137 Wis. 2d 90, 403 N.W.2d 449 (1987); *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 108 S. Ct. 1895 (1988). Accordingly, it follows that a criminal defendant must be informed about the No Merit option when it becomes *relevant* to the defendant's decision as how to exercise the rights of appeal.

Knowledge of the No Merit option obviously becomes relevant to a criminal defendant's decision about appeal whenever defendant's counsel suggests that no further appeal should be pursued because the defendant's case has no arguable merit. This is so whether or not the defendant agrees or disagrees with the assessment of counsel. The defendant may agree with counsel and the file may be closed at that point, as discussed below. However, to be fully informed, the defendant must know of the option to disagree with counsel's suggestion not to pursue the appeal further, and that by disagreeing with counsel the defendant may compel counsel to submit a No Merit report, pursuant to sec. (Rule) 809.32, Stats. Ineffective assistance of counsel would be found were counsel to close a file because of no merit when the criminal defendant does not know of the right to disagree with counsel's assessment and thereby compel counsel to submit a No Merit report.

Information about the No Merit option only becomes necessary when the No Merit option becomes

relevant to the defendant's decision as how to exercise the right of appeal. Information about a No Merit report is not necessary when the defendant does not desire to pursue an appeal. *See, e.g., Jones v. Estelle,* 584 F.2d 687, 691 (5th Cir. 1978). As pointed out by the *amicus* brief from the Office of State Public Defender, there are many possible reasons why a defendant may wish to forego any appeal which are unrelated to the specific avenues of appeal available. For instance, a criminal defendant may wish to forego an appeal even when there is arguable merit rather than to be exposed to the possibility of a greater penalty on resentencing or the resurrection of dismissed charges should the appeal succeed. Or the defendant may not wish to appeal based upon any number of personal, practical, or even idiosyncratic reasons.[4]

It is clear that counsel was obligated to inform Mr. Flores about the No Merit report option. Mr. Flores' counsel told him that she believed his appeal had "no arguable merit." This made the No Merit report option relevant to Mr. Flores' decision as to how to proceed at that point.

The question then becomes was Mr. Flores properly informed about the No Merit report option. This question was addressed at the September 1992 evidentiary hearing ordered by the court of appeals. Both in

---

[4] In *State v. Ludwig,* 124 Wis. 2d 600, 369 N.W.2d 722 (1985), for instance, it was implicit that ineffective assistance of counsel would not necessarily have been found if the client had been one who was adamantly proclaiming innocence and who had made it clear that cooperation or the acceptance of pleas would have been anathema. *Id.* at 611–612. (citing with approval language from *United States v. Bowers,* 517 F. Supp. 666, 670 (W.D. Pa. 1981).

his latest sec. 974.06, Stats., motion (construed as a writ of habeas corpus) and at the hearing, Mr. Flores admitted that his counsel discussed the appeal with him and told him that his appeal had "no arguable merit." His complaint now is that his counsel did not discuss the No Merit report option during their April 4, 1986 meeting. His counsel, testifying over six years after her meeting with Mr. Flores, answered candidly that she did not specifically remember whether she had discussed the No Merit report option with Mr. Flores. However, she did explain her practice at that time as to discussing the No Merit report option with clients:

> "[I]t was my practice to discuss the No Merit report and the defendant's right to a No Merit report under circumstances where I would inform the clients that there was no merit to an appeal, and no further action was going to be taken, and the client would disagree with that conclusion or in some manner let me know that they wished to assert their right to an appeal to the farthest limit . . . . It was my policy to discuss No Merit reports with clients under those circumstances if they appeared to challenge my conclusions or appeared to have trouble accepting the conclusions or to disagree with my conclusions. However, it was my practice to not necessarily discuss the No Merit Report if the client appeared to either accept my conclusions about the case, and to agree that no further action would be taken; or, if some further possibility would be left open, that there might be some further action taken in the future . . . . [I]f Mr. Flores hadn't agreed that I could close the file, I wouldn't have done it because it is my belief that I need my client's permission in order to take no further action and close the file. And if I don't have that, I don't do it." (100:9–10, 16, 21).

608

Based on this testimony, the referee concluded that there had been ineffective assistance of counsel because "[n]obody recalls whether [Mr. Flores] was advised that he had a statutory right if he disagreed with the lawyer to have a No Merit report. That to me is ineffective counsel. . . . I'm going to return this back to the Court of Appeals with that finding; that there was ineffective counsel in that Mr. Flores was *never* advised of his statutory right if he disagreed with the closing of the file." (100:59–60) (Emphasis added.)

The question of whether there has been ineffective assistance of counsel is a mixed question of law and fact. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S. Ct. 2052 (1984). "[D]eterminations of what the parties did, or did not do, and the basis for the attorney's challenged conduct are factual and will ordinarily be upheld unless they are against the great weight and clear preponderance of the evidence." *State v. Ludwig,* 124 Wis. 2d at 606–607 (citing *State v. Felton,* 110 Wis. 2d 485, 504, 329 N.W.2d 161 (1983)); *see also, State v. Pitsch,* 124 Wis. 2d 628, 633–634, 369 N.W.2d 711 (1985). However, if the facts involved are undisputed, or if the findings of the factfinder are based upon undisputed evidence, then this presents a question of law which is decided by this court without deference to the trial court's or referee's conclusions. *See, Compton v. Shopko Stores, Inc.,* 93 Wis. 2d 613, 616, 287 N.W.2d 720 (1980). The ultimate conclusion of whether an attorney's conduct constituted ineffective assistance of counsel is a question of law which this court decides without deference to the trial or appellate courts. *State v. Johnson,* 133 Wis. 2d 207, 216, 395 N.W.2d 176 (1986); *Ludwig,* 124 Wis. 2d at 607.

The referee's factual finding that Mr. Flores had not been told about the No Merit report option during the meeting with his counsel on April 4, 1986 was not clearly erroneous. However, the legal conclusion drawn by the referee from this fact was in error. Judge Moser's ruling implies that counsel's conduct was automatically ineffective assistance of appellate counsel because the No Merit report option was not mentioned by counsel at the same time as her discussion with Mr. Flores about the lack of merit to his appeal. That is not a proper application of the law.

We conclude that a criminal defendant is properly informed of the rights to appeal and the No Merit report option if the defendant knows that by disagreeing with counsel's conclusion of no merit counsel may be compelled to file a No Merit report. It does not matter how or in what manner the defendant is so informed. The exact manner in which this information is conveyed may well depend upon the circumstances and is best left to the professional judgment of counsel. There is no requirement that Mr. Flores be informed about the No Merit report option verbally at the time of his discussion with counsel about the lack of merit to his appeal. All that is required is that the information be conveyed to him. If there is evidence that he was informed once, by whatever means, there is no need that he be repeatedly informed.

The evidence in this case does show that Mr. Flores was properly informed before the April 4, 1986 meeting. There is undisputed evidence on the record that Mr. Flores was in fact informed of his appellate rights, and about the No Merit option, through the initial mailing to him from the Office of the State Public Defender. The Office of the State Public Defender

routinely delivers a packet of information, entitled, "Information for Clients" in its initial mailing to each new client. As was explained during the evidentiary hearing and in briefs and arguments to this court, this practice has been followed for years. Within this packet there is a brief description of the various options on appeals. The packet specifically covers subjects such as "What happens if I disagree with my lawyer?" and "No-merit reports."

Whether Mr. Flores actually received the mailing of information was a question addressed at the September, 1992 evidentiary hearing. Judge Moser concluded that "Mr. Flores was *never* advised of his statutory right if he disagreed with the closing of the file." (100:60) (Emphasis supplied.) That, however, is factually incorrect. Judge Moser did not properly account for the written information received by Mr. Flores. When characterizing the testimony about the information packet, Judge Moser credited counsel's testimony that the information was sent, but nevertheless concluded that the mailing had not been received: "[Counsel] says [the 'Information for Clients' packet] goes out in the ordinary course of business and the defendant says, I never saw it." (100:58). However, in fact, Mr. Flores did not deny receiving the mailing; rather Mr. Flores said, "I believe I did," when asked if he received the mailing. (100:49). There is also uncontested circumstantial evidence indicating that the mailing was received, in that Mr. Flores responded consistently with the directions given in the mailing.

We disagree with the findings of the referee. Had Mr. Flores denied receiving the mailing, despite circumstantial evidence to the contrary, the referee could choose to believe Mr. Flores. However, Mr. Flores did not deny receipt of the mailing.

Evidentiary hearings on ineffective assistance of counsel claims are governed by the standard rules of evidence. Should the defendant, as part of a claim of ineffective assistance of counsel, deny receipt of any information relevant to the appeal, the standard rules of evidence would apply to assist the factfinder. It is well established that the mailing of a letter creates a presumption that the letter was delivered and received. *See, Nack v. State,* 189 Wis. 633, 636, 208 N.W. 487 (1926), (citing 4 Wigmore, *Evidence* (2d ed.) § 2153; 1 Wigmore, *Evidence* (2d ed.) § 95); *Mullen v. Braatz,* 179 Wis. 2d 749, 753, 508 N.W.2d 446 (Ct. App. 1993); *Solberg v. Sec. of Dept. of Health & Human Services,* 583 F. Supp. 1095, 1097 (E.D. Wis. 1984); *Hagner v. United States,* 285 U.S. 427, 430, 52 S. Ct. 417, 418 (1932). Evidence that a given letter was mailed does not necessarily require specific recollection by the sender as to that particular letter. An office, such as the State Public Defender, may show that it is the ordinary course of business or office practice to mail the item in question. *See,* 31A *C.J.S. Evidence* §§ 136a, 139, 1A Wigmore, *Evidence* § 95 (Tillers rev. 1983). The proof of the office practice or routine as to mailing does not necessarily require testimony by the person who actually typed or deposited the letter. *See, Weinstein's Evidence* Vol. 2, § 406(03) (1993).[5] The court is entitled to credit counsel's testimony as to the office practice.

---

[5] *Weinstein's Evidence* Vol. 2, § 406(3), examining Federal Rules of Evidence, Rule 406, the treatise notes: "Rule 406 specifically provides that evidence of routine practices may be admitted 'whether corroborated or not.' The effect of this language is that evidence of one witness or admitted document evidencing the custom will suffice. Proof of custom [or routine practices] may, therefore, be utilized even when the person who

This evidence raises a rebuttable presumption which merely shifts to the challenging party the burden of presenting credible evidence of non-receipt. *United States v. Freeman,* 402 F. Supp. 1080, 1082 (E.D. Wis. 1975). Such a presumption may not, however, be given conclusive effect without violating the due process clause. *United States v. Bowen,* 414 F.2d 1268, 1273 (3d Cir. 1969); *Mullen v. Braatz,* 179 Wis. 2d at 453. If the defendant denies receipt of the mailing, the presumption is spent and a question of fact is raised. *See, Reeves v. Midland Cas. Co.,* 170 Wis. 370, 377, 174 N.W. 475, 477 (1920); 31A *C.J.S. Evidence* § 136; 9 Wigmore, *Evidence* § 2519 (Chadbourn rev. 1981). The issue is then one of credibility for the factfinder. The factfinder may believe the denial of receipt or the factfinder may disbelieve the denial of receipt. *See, Nack v. State,* 189 Wis. at 636, (citing 4 Wigmore, *Evidence* (2d ed.) § 2153; 1 Wigmore, *Evidence* (2d ed.) § 95; *see, also, Solberg v. Sec. of the Dept. of Health & Human Services,* 583 F. Supp. at 1098. However, once the presumption of mailing has been credited, as it was by the referee in this case, then it may not be overcome without a denial of receipt.[6]

---

engaged in the routine practices is unavailable to testify. In cases of mailing, the absence of a requirement that the mailing clerk himself [or herself] testify obviously accords with business realities."

[6] *See, McDermott v. Jackson,* 97 Wis. 64, 75, 72 N.W. 375 (1897), "Defendant did not deny having received the letter. He said he did not remember having received it. That did not weaken the *prima facie* effect of the evidence that the letter was sent through the mails in time for defendant to have received it before the action was commenced." *See also,* 31A *C.J.S. Evidence* § 136: "[I]n the absence of evidence of the nonreceipt of the

Hence it was clearly erroneous to conclude that Mr. Flores did not receive the mailing when in fact he did not deny receiving it.

We conclude that a criminal defendant may be informed about appellate rights through the use of written materials. Once so informed, the information need not be repeated verbally. Again, all that is required is that the proper information be conveyed. We conclude on the facts in this record that Mr. Flores was properly informed.

There is no requirement that any such information packet be provided. We conclude, however, that if such an information packet is used, the information contained in that packet would be sufficient to properly inform a criminal defendant about the No Merit report option. Barring exceptional circumstances, a defendant so informed will be presumed to have been properly informed.

What would constitute "exceptional circumstances" must be resolved on a case-by-case basis. Clearly, if a packet of written information is provided to a client who cannot read, and nothing is done to ensure that the information is either read to the client or explained to the client, then the duty of transmitting the required information may not be met. This, however, is not our present case. Mr. Flores claimed he

letter by the addressee, it has been considered the duty of the court or jury to find in favor of the presumption, and the verdict of a jury or the finding of a judge in opposition to this inference of fact, when based on no evidence of nonreceipt, or of delay in transmission, is against the weight of the evidence and will not be allowed to stand."

could not read during the period in question. However, Mr. Flores acknowledged receipt of all his correspondences and admitted that the contents of his correspondences had been read to him. Furthermore, it was clear that he had understood the content and significance of the mailings because he responded consistently with the directions in those correspondences.[7]

The next question raised in this case, then, is whether Mr. Flores waived his right to appeal or whether his counsel withdrew without permission and without prosecuting an appeal or filing a No Merit report.

The law is clear that "[a]n attorney's failure to perfect an appeal when the defendant has indicated a desire to appeal constitutes ineffective assistance of counsel." *United States v. Moisman,* 604 F. Supp. 1003, 1012 (1985); *see also, Clay v. Director, Juvenile Div., Dept. of Corr.,* 749 F.2d 427, 431 (7th Cir. 1984); *Hollis v. United States,* 687 F.2d 257, 259 (8th Cir. 1982), *cert. denied,* 459 U.S. 1221, 103 S. Ct. 1228 (1983). This also applies to the No Merit situation. The failure of counsel to file a No Merit report when the defendant has expressed a desire to appeal constitutes ineffective assistance of counsel. *See, Anders v. California,* 386

---

[7] *See, e.g.,* 31A *C.J.S. Evidence* § 136: Presumption [of receipt of mail] is strengthened where receipt of the letter is not denied, where the conduct of the addressee is inconsistent with nonreceipt of the letter, or where the addressee acknowledges receipt of a letter, and the letter in question was the only one written to him by the writer at about that time. Where several papers were inclosed in one envelope and sent by mail, and it is shown that one of them was received, the presumption that all of them were received is strong.

U.S. 738; *St. ex rel. McCoy v. Appeals Ct.,* 137 Wis. 2d 90; *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429.

However, there is no reason why a criminal defendant, who has been advised by counsel that an appeal of the defendant's case would have no merit, cannot agree with that assessment of counsel and voluntarily dismiss or forego the appeal. We note that both this court, in *St. ex rel. McCoy v. Appeals Ct.,* 137 Wis. 2d at 92, and the United States Supreme Court, in *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. at 431–432, cited voluntary dismissal as a viable option in these circumstances.

The decision to waive an appeal must be made by the defendant and it must be a valid waiver by the standards set forth in *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938); *see also, Jones v. Barnes,* 463 U.S. 745, 751 (1983). To be valid, such a waiver must be "an intentional relinquishment or abandonment of a known right or privilege." *State v. Albright,* 96 Wis. 2d 122, 129–131, 291 N.W.2d 487, *cert. denied,* 449 U.S. 957 (1980) (quoting *Johnson v. Zerbst).*

If a defendant does not know about a particular right and was not advised of that right, then there cannot be an intentional relinquishment or waiver of that right. *See, Craig v. Beto,* 458 F.2d 1131, 1136 (5th Cir. 1972); *Collier v. Estelle,* 488 F.2d 929 (5th Cir. 1974). This means that the defendant must know of the right to disagree with counsel's conclusion that the appeal would have no merit, and the defendant must know that by disagreeing counsel may be compelled to file No Merit report.

616

A valid waiver requires that the decision be made by the defendant. Mr. Flores cites *Collier v. Estelle,* 488 F.2d at 932–933, with approval, as expressing the proper standard on this point. *Collier* stands for the proposition that "[w]aiver of the fundamental right to appeal requires knowing and intelligent participation" by the criminal defendant. While no formalized waiver procedures are required, it must be apparent that the defendant "either suggested, acquiesced in or concurred with the decision to dismiss the appeal." *Collier,* 488 F.2d at 932.

Once these requirements are met, it will be presumed that a waiver of the rights to appeal was made voluntarily, knowingly, and intelligently. In both *Argiz* and *Thiesen v. State,* 86 Wis. 2d 562, 273 N.W.2d 314 (1979), this court held that once a defendant had been informed of the right to appeal, the court would presume that a waiver of those rights was made voluntarily, knowingly, and intelligently. As *Thiesen,* 86 Wis. 2d at 568, explained, "[w]hen the trial court has given the *Whitmore* instructions [informing a criminal defendant of the right to appeal] we must assume, barring a showing of exceptional circumstances, that if a motion for a new trial is not made, the defendant has knowingly waived his right. Any other assumption makes the *Whitmore* instructions meaningless." It also follows that once a criminal defendant has been informed of the right to appeal, the criminal defendant must act in accordance with that information in exercising the right to appeal.

Once the criminal defendant is informed of the No Merit report option, the defendant will be presumed to

617

have validly waived the No Merit report option unless the defendant activates the No Merit report requirement by actually disagreeing with counsel's advice and expressing the desire to appeal. Once a defendant is so informed, it is incumbent upon the defendant to actually express disagreement.

A defendant may rebut this presumption by showing exceptional circumstances or good cause for a failure to file the appeal on time. The court of appeals may allow an out-of-time appeal under sec. (Rule) 809.82, Stats. However, failure to bring an appeal does not mean that an invalid waiver has occurred. The criminal defendant has the burden of coming forward with an explanation for the failure to file. *Thiesen,* 86 Wis. 2d at 566.[8]

The question is whether Mr. Flores did express disagreement with his counsel's conclusion that his appeal would have no merit. What was said and done is a question of fact. Whether there was adequate participation by Mr. Flores and whether counsel was remiss in how she handled the matter are questions of law.

This is not a case in which counsel simply abandoned her client. Mr. Flores admits that his counsel met with him and discussed the appeal with him. Mr. Flores admits that counsel informed him that she believed the appeal had "no arguable merit" and that she asked him if he had anything else to add. He does not claim to have expressed any disagreement with her conclusion. Mr. Flores does not claim to have

[8] *See, also, Argiz,* 101 Wis. 2d at 558, in which this court has reiterated that, "a defendant has the burden of coming forward with more than an unsubstantiated assertion that he was uninformed of his appeal rights . . . ."

instructed his counsel to pursue the appeal despite the fact that she found no arguable merit. Mr. Flores does not claim that he requested that counsel file a No merit report. In fact, he does not claim to have given counsel any instructions whatsoever.

What remains, then, is only a bald claim that Mr. Flores simply did not understand that counsel was closing the file. However, even this claim wears thin in light of subsequent events. Mr. Flores admits that he knew the deadline for appeal had passed and he admits that he was informed by his counsel in both of their next two correspondences that she had closed the file. He now claims that he understood "closed" to mean that counsel had transferred his file to new counsel. Yet, at no point did he inquire as to who was supposedly handling his case; nor did he request new counsel. In fact, it was almost four years later, after two prior motions for post-conviction relief under sec. 976.04, Stats., and one petition for habeas corpus, that Mr. Flores finally alleged ineffective assistance of appellate counsel.

We have no difficulty rejecting Mr. Flores' particular claims. However, since we are concerned that genuine misunderstandings of this type may occur, we will outline some procedures below which should minimize the chance for such misunderstandings in the future. We also take this opportunity to identify the proper standard for analyzing such claims.

■■■

Since such complaints of misunderstanding are still in essence claims of ineffective assistance of counsel, we must turn to the standards set forth in *Strickland*. In *Strickland,* 466 U.S. at 687, the U.S. Supreme Court devised a two-part test for determining whether there has been ineffective assistance of coun-

sel. To establish a claim for ineffective assistance of counsel, the defendant has the burden, first to show that counsel's performance was deficient, and second, that the deficient performance was prejudicial.

In the case of *complete* denial of appeal, prejudice is presumed. That is, whenever the ineffective assistance is such as to deprive one *totally* of the right to appeal, the prejudice showing is presumed. *Strickland,* 466 U.S. at 692; *Penson v. Ohio,* 488 U.S. 75, 88, 109 S. Ct. 346 (1988). However, that does not relieve the defendant of the burden to show some act or omission of counsel which constituted deficient performance. *Strickland,* 466 U.S. at 690.

In determining whether there was any act or omission which would constitute deficient performance, the standard is one of reasonable professional judgment or reasonable professional conduct. This inquiry is a deferential one. As the United States Supreme Court directed in *Strickland,* 466 U.S. at 690, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . A convicted defendant making a claim of ineffective assistance must identify acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment . . . ." Likewise this court has held that in examining ineffective assistance of counsel claims, "judicial scrutiny of counsel's acts will be highly deferential." *Pitsch,* 124 Wis. 2d at 637.

The last remaining question in the present case, then, is whether it was reasonable to assume that Mr.

Flores had agreed to the conclusion that the appeal had no merit and that the file should be closed. In applying the standard of reasonable professional judgment, we first wish to emphasize that a criminal defendant's counsel is not expected to be a mind-reader. "[A] court deciding an actual ineffective assistance claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . ... The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Pitsch,* 124 Wis. 2d at 636–637 (citing *Strickland,* 466 U.S. at 690–691). There is no requirement that the defendant's disagreement be expressed in any particular way. The nature and sufficiency of either the defendant's acquiescence or disagreement or the actions of counsel will depend upon the particular facts of each case. However, in the present case, there is no claim that Mr. Flores disagreed with counsel or instructed her to do anything which she then refused to do. The testimony indicates that Mr. Flores appeared to agree, albeit reluctantly, with counsel's conclusion. It was, therefore, quite reasonable for counsel to conclude that Mr. Flores had agreed with counsel's assessment. There is no deficient performance on this record.

We also note in this context that counsel has not merely the option, but rather an ethical duty, to attempt to persuade a defendant to withdraw or not pursue an appeal if after thorough examination of the case counsel believes that an appeal would be frivolous and without merit. *See McCoy,* 486 U.S. at 436–437; *Cleghorn v. State,* 55 Wis. 2d 466, 476, 198 N.W.2d 577 (1972); and *The ABA Standards for Criminal Justice,*

(Second ed.) (1986 Supp. Vol. I), Commentary, sec. 4–8.3. This obligation must also be factored into the court's oversight of these communications between counsel and client.

Mr. Flores' final argument is that a formal motion to withdraw must be filed in all cases before a file may be closed because of no merit. Mr. Flores cites a partial sentence from *McCoy,* 486 U.S. at 437, which states that, "withdrawal is not possible without leave of court . . ." However, we do not read *McCoy* as establishing any rule that counsel must always submit a formal motion to withdraw before closing a case file. It is clear from the context of *McCoy* that the court was referring only to those situations in which *Anders* has been implicated.

*Anders* holds that a formalized withdrawal is required when counsel and client disagree and the defendant wishes to pursue an appeal despite counsel's conclusion that there is no arguable merit to the appeal. The record was clear in *Anders,* 386 U.S. at 739–740, in *Penson,* 488 U.S. at 77–79, and in *McCoy,* 486 U.S. at 431–32, that the indigent defendant continuously maintained his desire to appeal and made that desire known to his appointed appellate counsel. Nothing in *Anders* or *McCoy* purports to create a rule that all withdrawals must be accomplished by formal motion to the court. Hence we find no basis for requiring that a formal request to withdraw be filed where both the attorney and the client agree that no appeal should be taken.

Both Mr. Flores and the State have suggested that this court draw upon its superintending authority to construct new rules regulating how withdrawal is accomplished. The parties differ, however, as to what

rules or procedures might be advisable and feasible. We agree that some recommendations may be helpful, however, we decline the invitation to formulate fixed and binding rules in this area at this time.

The main problem presented in this case was essentially evidentiary, i.e., proving what was said and done. The law on this issue requires only that the criminal defendant's rights be protected, it does not require any particular documentation showing how this has occurred. Yet, although a valid waiver of appeal may be found without any particular form of documentation, the question remains for counsel as to how one might best document that withdrawal of representation was properly accomplished.

Several different forms of documentation have been suggested in this case and in the literature. It has been suggested that counsel document in the defendant's personal and counsel's office files what was discussed with the client, and when, concerning no merit and withdrawal. It has been suggested that counsel send a letter to the criminal defendant confirming those conversations with the defendant in which it was agreed that further appeal should not be pursued. It has also been suggested that a letter confirming the agreed upon withdrawal (or a copy of the letter to the client just described) be sent to the case file with the trial court. Any and all of these methods of documentation might be used, but none is required. However, if these methods of documentation are used, they could be considered strong evidence that counsel's actions were proper.

We emphasize, however, that failure to utilize these methods of documentation does not raise any inference or suggestion that the defendant's rights were compromised. Nor are we willing to make any particular method of documentation mandatory. We are mindful that these various forms or procedures of documentation, if made mandatory, might impinge upon the efficient administration of justice and unnecessarily burden courts with new filing requirements. We also acknowledge the concerns expressed by the Office of the State Public Defender in its amicus brief that certain forms or procedures of documentation might interfere with counsels' ability to exercise reasonable professional judgment and conduct. We note, for instance, that no party presently advocates requiring a waiver of appeal form, (i.e., a form signed by the defendant documenting the decision to forego an appeal). Even in dissent, Judge Nettesheim of the court of appeals expressly rejected requiring a formal waiver of the right to appeal. *Flores II,* 170 Wis. 2d at 282 (dissent). We also reject such a rule at this time.

In conclusion, we find no ineffective assistance by appellate counsel in this case.

*By the Court.*—Petition denied.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I am unwilling to say that the professional conduct at issue in this case—counsel's failure to discuss a no-merit report with the client—falls below a constitutionally acceptable threshold. I nonetheless find it troubling for counsel to rely on a written explanation—rather than a face-to-face explanation—of the right to a no-merit report.

The indigent criminal defendant in this case was informed of his constitutional right to a no-merit report, essential to a valid waiver of his right to appeal, only by mail in a packet of information sent to all clients of the State Public Defender. Under the State Public Defender's policy, the public defender would have directly advised the defendant of his right to a no-merit report only if he had expressed disagreement with her judgment that an appeal had no arguable merit. Nevertheless, the information mailed to the defendant explicitly states that an attorney who concludes that an appeal would be of no merit "will discuss available options with [the defendant]." Here, it is undisputed that no such discussion took place.*

Sending information about the appellate process to new clients by mail seems sensible to me. Despite the large case loads of public defenders and the limited funds available for counsel for indigent defendants, I believe the better practice would be for the attorney to supplement the mailing by discussing the right to a no-merit report with the client in person when the decision to file a no-merit report would be made. In such a

---

*This section of the State Public Defender's "Information for Clients" reads as follows:

> No-merit reports. If a lawyer is of the opinion, after full review of the case and consultation with you, that any further proceedings on your behalf would be frivolous and without arguable merit, and you do not choose to relieve your lawyer of further representation, the lawyer will file a "no-merit report" as prescribed under sec. 809.32. Such reports are filed in very few of the office's cases. However, many cases are closed without any formal postconviction proceedings. If your lawyer can find no meritorious ground to attack your conviction or sentence, he or she will discuss the available options with you.

Could this paragraph be rewritten to make it more easily understood by lay people?

face-to-face meeting counsel would have an opportunity to answer questions and correct any apparent misunderstandings.

In considering this case, it is difficult to ignore the underlying fact that it involves an appeal of a no-contest plea, which an experienced public defender determined to have no arguable merit. Under these circumstances, it is nevertheless important to remember why the United States Supreme Court required appointed counsel to file no-merit reports before asking an appellate court for leave to withdraw. Chiefly, the Court aimed to ensure that lawyers appointed to represent indigent criminal defendants would not shirk their duties and withdraw from representation without careful consideration of each case. *See Anders v. California,* 386 U.S. 738 (1967).

There is no indication in the case at bar that the attorney in any way avoided her responsibilities or exercised poor judgment. Still, we must keep in mind that "[t]he *Anders* requirement assures that indigent defendants have the benefit of what wealthy defendants are able to acquire by purchase—a diligent and thorough review of the record and an identification of any arguable issues revealed by that review." *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 439 (1988).

For the reasons set forth, I write separately.

I am authorized to state the Justice JANINE P. GESKE joins this opinion.