NEUBAUER, C.J.[1]
¶ 1 John P. Bougneit appeals from his conviction for fourth-degree sexual assault, WIS. STAT. § 940.225(3m), and from an order denying his postconviction motion, in which he asserted his trial counsel provided ineffective assistance when he failed to rehabilitate the credibility of his wife, Melissa Bougneit, who was present at the time of the alleged assault. We conclude that Bougneit has not shown that counsel's alleged failure was prejudicial in that, even if Melissa had been questioned in the manner he suggests, it is unlikely that the outcome would have been different. We affirm.
BACKGROUND
¶ 2 The material allegations were in direct dispute. We first summarize the testimony of the victim, R.L.
¶ 3 Eighteen years old at the time, R.L. was a friend of the Bougneit family. On the evening of December 29, 2015, R.L., Bougneit, and Melissa watched a movie and then television shows at the Bougneit home. All three sat on the couch, with R.L. in the middle. During the shows, Bougneit began touching R.L.'s bra and breasts under a blanket. He then moved his hand to her underwear and rubbed near her vagina. When he tried to put his finger into R.L.'s vagina, she clamped her legs shut. R.L. left when she received a text from her sister indicating she was there to take her home. Once in the car, R.L. began crying hysterically, telling her sister that Bougneit touched her inappropriately. They drove to the store where their father was working third shift. After telling him what happened, the three drove to the Mukwonago Police Department to report the incident.
¶ 4 At trial, Bougneit called Melissa as a witness. Testifying she was "hyperaware of details that night," Melissa was on the couch the entire time, saw no inappropriate touching at any point, denied that Bougneit's hand was underneath the blanket, and noted that R.L. hugged both her and Bougneit as she got up to leave. Melissa first learned about the sexual assault allegations a couple of weeks later-in about mid-January-from a "Victoria." Near the end of January and in preparation for meeting with the police, Melissa drafted a statement about her recollection of the evening. On January 30, she met with police and gave them her written statement. Her statement contained many details, such as the type of blanket over R.L., the exact positioning of each of them on the couch, and the times R.L. got up to use the bathroom.
¶ 5 Bougneit chose to testify and categorically denied every aspect of the touching allegations, including putting his hand under the blanket. He also stated that they had first heard of the allegations from Victoria.
¶ 6 During closing arguments, the State attacked Melissa's credibility, zeroing in on the amount of detail she put into her written statement. The State asserted that it was "incredible" for anyone to remember so many details of a particular and routine evening, pointing out Melissa claimed she recalled these details even before she was aware of the sexual assault allegations. The State suggested Melissa was "over testifying" and "overdoing it" because she was "embarrassed" by the allegations against her husband.
¶ 7 During its deliberations, the jury posed two questions and requested photos and witness statements. One question was, "Melissa discovered from Victoria that John was accused. Who is Victoria?" The court instructed the jury "to rely on your collective memory with respect to the facts." The jury returned a verdict of guilty.
¶ 8 Bougneit moved for postconviction relief, asserting he had been denied effective assistance of counsel due to counsel's alleged failure to rehabilitate Melissa's credibility. Specifically, Bougneit contended counsel should have asked Melissa to specifically identify Victoria, as Victoria was R.L.'s mother, and Melissa and Victoria had been longtime friends before that night. This would explain, Bougneit contended, how Melissa knew about the assault allegations before she drafted her detailed statement about that evening.
¶ 9 At the Machner[2] hearing, trial counsel testified his strategy was to (1) discredit R.L., (2) discredit the police investigation, and (3) elicit eyewitness testimony from Melissa that she saw nothing improper transpire that evening. He did not ask Melissa about Victoria because he did not think it was important, but acknowledged, looking back, the benefit of exploring the source of Melissa's knowledge of the allegations and the possibility that it would have enhanced Melissa's credibility.
¶ 10 The circuit court denied the motion, concluding that the case was "well tried by both parties," that defense counsel "did an outstanding job" highlighting the unlikelihood of an assault taking place next to Melissa, and that the jury nonetheless chose to believe the "credible and powerful" testimony of R.L. Bougneit appeals.
DISCUSSION
¶ 11 Determining whether there has been ineffective assistance of counsel presents a mixed question of law and fact. State ex rel. Flores v. State , 183 Wis. 2d 587, 609, 516 N.W.2d 362 (1994). A circuit court's findings of fact relating to the circumstances of the case and counsel's performance will not be overturned unless clearly erroneous. State v. Knight , 168 Wis. 2d 509, 514 n.2, 484 N.W.2d 540 (1992). Whether counsel's performance was deficient and prejudicial, however, are questions of law which we review and decide de novo. Id.
¶ 12 An ineffective assistance of counsel claim succeeds only if the defendant makes two showings: (1) that counsel's performance was deficient, meaning that counsel's "errors [were] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that the deficient performance prejudiced his defense because the "errors were so serious as to deprive him of a fair trial, a trial whose result is reliable." Strickland v. Washington , 466 U.S. 668, 687 (1984). Because both showings are necessary, the claim fails if one is missing. Id.
¶ 13 We need not decide whether counsel for Bougneit performed deficiently. Bougneit has not met the second requirement of an ineffective assistance of counsel claim-prejudice.[3] To demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter , 562 U.S. 86, 112 (2011).
¶ 14 Bougneit argues that the failure to disclose Victoria's full identity may have led the jury to make mistaken and harmful assumptions about how Melissa knew about the sexual assault allegations before she wrote her detailed statement at the end of January. The jury may have assumed, he contends, that Melissa knew about the allegations because she either witnessed the assault or because Bougneit told her about it, perhaps leading Melissa to simply make up a fictional "Victoria" so that Melissa could account for how she knew about the allegations before drafting her statement. Had Victoria's identity been more fully provided to the jury, Bougneit argues these assumptions would have been dispelled and her credibility bolstered.
¶ 15 The premise of Bougneit's argument is unfounded, as Melissa's credibility was not attacked on this point. The jury was not left to guess or make assumptions about how Melissa knew of the allegations before drafting her statement. It went undisputed that Melissa learned about the allegations in mid-January from Victoria. In his testimony, John confirmed Victoria as the source. Although the State asked Melissa several questions about the timeline of events and her knowledge of them, it never contradicted or criticized Melissa's testimony on this point, in either subsequently admitted evidence or in closing arguments. No one disputed that the source of Melissa's knowledge was a woman named Victoria, and we fail to see the need to rehabilitate, much less bolster, Melissa's credibility on a matter that was uncontested. We also fail to see prejudice on what would have plainly been speculation by the jury on an uncontested matter.
¶ 16 Bougneit also asserts that, given that Victoria told Melissa about the assault allegations in mid-January, it made it more plausible for Melissa to have remembered certain details than had she first learned of the allegations on January 30 when she was questioned by police. We do not disagree, but this point reveals no possible prejudice as the jury was in fact told about this exact chronology by Melissa, and the State again did not attempt to contradict it.
¶ 17 Rather, the State attacked Melissa's credibility with regard to the level of details that she recalled. However, Bougneit has not explained how further identifying Victoria would have helped to make Melissa's good memory of that night more believable. It was Melissa herself that testified she was "hyperaware" of that night's details even "prior to knowing that [R.L.] was saying [Bougneit] allegedly sexually assaulted her." That is, before Victoria told Melissa about the allegations in mid-January, Melissa already had a highly detailed recollection of the night. When asked why she was hyperaware of the details, Melissa explained that it was because they did not often have company over in the evening.[4] That Victoria was the source of Melissa's knowledge about the allegations had little or nothing to do with Melissa's stated reasons for recalling the details. We fail to see why the jury would have found Melissa's ability to recall details more credible because she learned about the assault allegations from the accuser's mother as opposed to learning about such serious allegations from the police or other source, nor has it been shown that knowledge of the identity of Victoria would have, in light of the totality of the evidence, led to a different result.
¶ 18 Plainly, Bougneit's postconviction objection to his counsel's performance attempts to seize on the fact that the jury requested the identity of Victoria. But the jury's inquiry of such a detail is not enough to show the necessary prejudice. The jury's request could have simply been for context or clarification, and the inquiry shows that the jury at least heard and understood that Melissa claimed Victoria was the source of Melissa's mid-January knowledge about the allegations.[5] We cannot conclude providing the jury with a detail on a matter not in dispute would have resulted in a different outcome.
¶ 19 Bougneit asserts the failure to rehabilitate Melissa's credibility was akin to a failure to call a material witness, citing State v. Jenkins , 2014 WI 59, 355 Wis. 2d 180, 848 N.W.2d 786. The comparison is not close. In Jenkins , the court concluded that defense counsel's failure to present a witness was both deficient and prejudicial. Id. , ¶ 67. With regard to prejudice, the court emphasized that the State's case rested entirely on one witness (there was no physical evidence) and that her account would have been directly contradicted by the defense witness. Id. , ¶¶ 52-54, 59. Jenkins may have been a relevant authority had Bougneit's counsel failed to call Melissa as a witness, but Melissa was called, and her testimony directly rebutted the account given by the State.
¶ 20 Assuming without deciding that it was an error of defense counsel not to rehabilitate Melissa's credibility by further identifying Victoria, Bougneit has not shown how bringing out that detail would have led to a reasonable probability of a different result. The ineffective assistance of counsel claim fails.
By the Court .-Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version.

State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

In his briefing, although Bougneit sets forth Strickland 's two elements of deficiency and prejudice, his arguments do not clearly distinguish between the two. See Strickland v. Washington , 466 U.S. 668, 687 (1984). We will be addressing his arguments within the context of whether the alleged deficiency was prejudicial.

Another aspect of Melissa's testimony attacked by the State was her reference to Bougneit's right arm being placed on the back of the couch, which differed from her written statement's reference to his right arm being placed "upon her shoulder." Bougneit does not contend that further identifying Victoria would have helped Melissa's credibility on this point.

As discussed, we question how further identifying Victoria would have been helpful to Bougneit's case. Indeed, it is possible it could have been harmful. After listening to the testimony and arguments at the Machner hearing, the circuit court noted that identifying Victoria could actually bolster R.L.'s credibility, in that "here's the mother of the victim providing the information to the wife about the details of the sexual assault ... [c]onsistent with [R.L.'s] testimony." Bougneit's postconviction counsel acknowledged this was a possibility and "[p]otentially" damaging to Bougneit.