WHITMORE, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 56. Submitted November 30, 1972.—Decided January 3, 1973.*

(Also reported in 203 N. W. 2d 56.)

---

* Motion for rehearing denied, without costs, on February 27, 1973.

708

For the plaintiff in error the cause was submitted on the brief of *Thomas R. Fahl* and *Brendel, Flanagan & Sendik, S.C.,* all of Wauwatosa.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

HEFFERNAN, J. The defendant acknowledges his waiver of jury trial, but he contends that the relative advantages and disadvantages of a jury trial were not explained to him before he executed the waiver and acknowledged it in open court.

The record shows that, before accepting the waiver, the circuit judge questioned the defendant and ascertained that the waiver was voluntary and was not the result of any threats or promises made to him. At the hearing on the defendant's postconviction motion, he testified that he waived the jury voluntarily on the ad-

vice of his attorney. The record shows that Whitmore had a high school education and that he knew that his waiver of a jury trial would result in a trial before a single judge instead of before 12 citizens.

At the postconviction hearing, the defendant's trial attorney testified that the choice was explained to the defendant and that the defendant agreed to a trial before the judge. The record shows that the defendant's waiver of trial by jury was a voluntary decision after consultation with counsel. The legal consequences of that choice were made clear to Whitmore and were fully understood by him. His claim that he was denied the right to a jury trial is without support in the record.

Whitmore also contends that the state failed to adduce evidence sufficient to prove his guilt beyond a reasonable doubt. The evidence was circumstantial. The victim, Fred H. Jones, testified that, at approximately 2:50 a. m. on the morning of July 30, 1970, he was on a street corner in Milwaukee waiting for a bus when a blond, white woman in a small light-colored car drove up and offered him a ride. Instead of taking him to his expected destination, she drove him into an alley, where a man appeared, opened the door next to Jones, and ordered him out. The assailant struck Jones on the side of the head with a small baseball bat, knocking him to the ground. The assailant then told the woman to drive off. The robber then went through Jones' pockets, taking his purse and his umbrella. At this point Jones noticed another car, red with a white top, parked nearby in a vacant lot adjacent to the alley. The assailant called to the driver of the other car to pull up. The car then pulled up. The assailant then climbed into the car and drove away.

Jones was only able to identify his attacker as being black, with a mustache and small in stature. He was unable to further identify his assailant because he lost

his glasses in the assault and he had defective vision. Approximately five minutes later, the Milwaukee police department stopped a red and white convertible as it emerged from the very alley in which the robbery had taken place. The defendant Whitmore was a passenger in the automobile, and the driver was identified as De Tiege J. Williams.

A search of the car uncovered a small baseball bat and various items of personal property which Jones identified as having been taken from him. None of the loot from the robbery was found on Whitmore's person. It was on the basis of this circumstantial evidence that Whitmore was convicted.

The defendant testified, however, that on the evening in question he had been given a ride by Williams to the area near where the robbery occurred. He stated that he was then dropped off, but, upon finding that a girl friend he wished to visit was not home, he proceeded on foot. He claimed that he was walking in the alley near where the robbery took place when he was met by Williams driving south in the red and white automobile. Williams offered him a ride, which he accepted. Only moments later, the vehicle was stopped by the police.

Both Williams and the defendant herein were arrested and subsequently convicted in separate trials. Whitmore denied any knowledge of any attack on Jones, and at trial denied that he had any knowledge that Williams, immediately before picking up Whitmore, had been engaged in an altercation down the alley. One of the police officers testified, however, that Whitmore immediately after his arrest stated that Williams, just before picking up the defendant, had been having an argument up the alley with an older person.

On this appeal the defendant contends that the circumstantial evidence was insufficient to find him guilty beyond a reasonable doubt. Defendant properly relies

upon the rule of law appearing in *Kollock v. State* (1894), 88 Wis. 663, 665, 60 N. W. 817, that circumstantial evidence must "not only point with moral certainty to the guilt of the defendant, but must exclude, to a moral certainty, every other reasonable hypothesis." Defendant's counsel poses the hypothesis that Williams, the admitted assailant, was married to a white woman (this does not appear in the record of the instant case) and that a white woman drove the automobile which took Jones to the scene of the robbery. He hypothesizes that, after Jones was dragged out of the vehicle by Williams, the white female drove the white automobile a short distance away and then moved the red and white automobile to a point where Williams could get into it and then returned to her own vehicle and drove away prior to the arrival of the police. This hypothesis, however, is without support in the evidence and is contrary to the evidence Jones gave at the trial. He was able to see his assailant get into the automobile before it drove away, although he could not remember whether his assailant got in on the driver's side. There was no testimony that any other person had then left the vehicle. The hypothesis posed is neither plausible nor reasonable. It has no support in the evidence. As we said in *State v. Smith* (1967), 36 Wis. 2d 584, 590, 591, 153 N. W. 2d 538:

"The test of sufficiency of the evidence in a criminal case is the same whether the proof be by evidence that is circumstantial or testimonial. The burden is upon the state in all cases to prove the defendant guilty beyond a reasonable doubt. *Gauthier v. State* (1965), 28 Wis. 2d 412, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671. The test upon appeal is not whether the evidence if presented to this court would be sufficient to convince us of the defendant's guilt beyond a reasonable doubt, but whether the evidence adduced, believed, and rationally considered was sufficient for the jury to make such a finding."

Here, the uncontradicted testimony revealed that the defendant was arrested in the very alley where the crime was committed and only about a block away almost immediately after the robbery. He was in an automobile fitting the description supplied by the victim. A search of the car revealed items of personal property which were identified by the victim as having been taken from him. These facts, which were uncontradicted, support the inference that the defendant was guilty of the crime of robbery either as a principal or as a party to the crime. For the judge to give any weight to an alternative hypothesis, it would have been necessary for the judge to give credence to Whitmore's statement that he was picked up only after the crime. It was within the province of the judge as a trier of the fact to disbelieve Whitmore.

We are satisfied that the evidence was sufficient to support the inference that the defendant was guilty of the crime charged. The defendant's hypothesis of innocence is inconsistent with the facts the judge was entitled to believe.

Whitmore claims, moreover, that his trial counsel failed to afford him the effective representation that is guaranteed by the sixth amendment of the United States Constitution. This court has stated that counsel will be found to be ineffective only when the representation given was so inadequate and of such low competence that it amounted to no representation at all and reduced the trial to a sham and a mockery of justice. *Swonger v. State* (1972), 54 Wis. 2d 468, 474, 195 N. W. 2d 598. Whitmore's contention that counsel was incompetent is founded upon the fact that Williams, who had pleaded guilty prior to Whitmore's trial, admitted that he was the one who had committed the actual assault upon Jones. The record at the hearing on the postconviction motions contains an affidavit in which Williams asserts

that the defendant Whitmore was entirely innocent and had no part in the robbery. Whitmore argues that competent counsel would have produced Williams at trial. At the hearing on Whitmore's postconviction motion, trial counsel testified that his decision not to call Williams as a witness was attributable to his considered strategy in managing the trial. He stated that he based the decision not to call Williams on the fact that he had examined Williams' testimony at his earlier trial. Trial counsel stated:

"Mr. Williams had a very bad past record, and there appeared to be quite a few discrepancies as I recall it in his testimony at the trial before Judge COFFEY. I had no faith in Mr. Williams whatsoever."

He said that such was his feeling about having Williams testify irrespective of what judge might try the case. It is apparent, therefore, that trial counsel, as a matter of strategy, concluded that he should not have Williams testify, because he would indeed make a poor witness for Whitmore. Given the defendant's weak case, it was not unreasonable for trial counsel to determine that it would be inadvisable to present a witness with a bad criminal record who had given what the present record shows was conflicting and inconsistent testimony at his own trial. An attorney's strategic decision based upon a reasonable view of the facts not to call a witness is within the realm of an independent professional judgment. *Poole v. United States* (8th Cir. 1971), 438 Fed. 2d 325; *Eaton v. United States* (9th Cir. 1971), 437 Fed. 2d 362. In reviewing the record, we are satisfied that trial counsel provided vigorous and able advocacy for the defendant in a most difficult case. Whitmore was not denied representation by competent counsel.

Whitmore contends that his fifteen-year sentence as a party to the crime of armed robbery constitutes cruel

and unusual punishment in violation of the eighth amendment of the United States Constitution and art. I, sec. 6, of the Wisconsin Constitution. The test for determining whether a sentence imposed is cruel and unusual is whether it is " 'so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.' " *State v. Morales* (1971), 51 Wis. 2d 650, 657, 187 N. W. 2d 841; *Mallon v. State* (1970), 49 Wis. 2d 185, 192, 181 N. W. 2d 364; *State v. Pratt* (1967), 36 Wis. 2d 312, 322, 153 N. W. 2d 18.

In view of the fact that the crime of armed robbery to which the defendant was found to be a party involved the assault with a baseball bat upon an elderly man, the maximum statutory penalty imposable upon conviction is imprisonment for a term of thirty years. Considering the nature of the crime and the danger such conduct creates for the victim, we are satisfied that the sentence imposed does not shock society's sense of what is right and proper in the circumstances. The sentence did not violate the constitutional prohibition against cruel and unusual punishment.

Nor can we conclude the trial judge abused his discretion in the imposition of the sentence. In passing sentence, Judge O'CONNELL noted that the defendant was involved in a crime of a most serious nature that resulted in the violent clubbing of a disabled, elderly man. A sentence of thirty years could have been imposed. The trial judge originally imposed that maximum sentence, but when he was reliably informed that the defendant, although a party to the crime, was not the actual assailant, he reduced the term to fifteen years. The trial judge, in accordance with *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512, fully stated the reasons for the sentence imposed. The defendant's

sentence was not excessive and does not warrant a departure from this court's policy against interfering with the trial court's sentencing discretion except in cases of clear abuse of that power. *State v. Schilz* (1971), 50 Wis. 2d 395, 400, 184 N. W. 2d 134; *Riley v. State* (1970), 47 Wis. 2d 801, 177 N. W. 2d 838.

We have elected to review the alleged abuse of discretion in sentencing, even though as a matter of right such review is not available where an appropriate motion for reduction of sentence has not been made. *Farley v. State* (1971), 50 Wis. 2d 113, 115, 183 N. W. 2d 33. Contrary to the admonitions of this court, trial counsel also failed to move the court for a reconsideration of the sufficiency of the evidence. Such failure would, in a jury case, have precluded the defendant from asserting as a matter of right the insufficiency of the evidence. We reiterate the admonitions of *State v. Escobedo* (1969), 44 Wis. 2d 85, 89, 170 N. W. 2d 709—that appropriate post-trial motions should be made to the court whether the trial is to the court or to the jury. Failure of trial counsel to do so results in the loss of the opportunity to correct either an error or an abuse of discretion prior to what may be an expensive and protracted appellate process, and while the facts are fresh in the mind of the trial judge.

In the instant case trial counsel failed to make any postconviction motions. The record is devoid of any information that would lead us to conclude that the omission was the result of the considered judgment of trial counsel and the defendant or whether counsel thought his duties to the defendant terminated with the imposition of sentence.

Whitmore made a timely application for appeal to this court approximately a week before the time for appeal had expired. The appointment of counsel in this court

came too late for the attorney to bring post-trial motions within the ninety days required by law.

While we have considered and disposed of issues that conceivably could have been raised immediately after trial, this case demonstrates a gap between the obligation of trial and appellate counsel. During the limbo thus created, valuable rights of the defendant may well be lost.

While in *Peterson v. State* (1972), 54 Wis. 2d 370, 195 N. W. 2d 837, we stated the trial judge's obligation to advise the defendant of his right to appeal, it is apparent that additional procedures are mandatory if the right to appeal is to be fully meaningful.

The commentary to Standard 2.2 of the American Bar Association *Standards Relating to Criminal Appeals,* Approved Draft, page 47, addresses itself to this problem:

"A major problem in the administration of criminal justice today is the hiatus in proceedings as a case moves from the trial to the appellate court. This period is, in many ways, of crucial importance to the defendant; yet it frequently happens that no legal representation exists, sometimes for months, at this juncture. Lawyers, whether retained or assigned at trial, all too often take the view that their responsibilities have ended with the final judgment of the trial court."

While we approve of the general philosophy of the American Bar Association *Standards Relating to Criminal Appeals* set forth in 2.2,[2] it is apparent that the

---

[2] **"2.2 Trial counsel's duties with regard to appeal.**

"(a) Trial counsel, whether retained or court-appointed, should continue to represent a convicted defendant to advise on whether to take an appeal and, if the appeal is sought, through the appeal unless new counsel is substituted or unless the appellate court permits counsel to withdraw in the interests of justice or for other sufficient cause.

"(b) Defense counsel is uniquely situated and should take it as his duty to advise a defendant on the meaning of the court's judgment and his right to appeal and on the possible grounds for

standard itself does not dovetail with the present pro-
cedures of this court where, in general, indigent defend-
ants who wish to appeal have new appellate counsel ap-
pointed by this court who serve either under the aegis
of the state public defender's office or one of the local
legal services. Nevertheless, it is apparent that the
duties of trial counsel should not cease until the decision
is made by the defendant and his counsel whether to
appeal immediately or undertake any postconviction mo-
tions that may be desirable. It is the obligation of trial
counsel to continue his representation of the defendant
during this stage of the proceedings and assist the de-
fendant in making a reasonable decision. He has the
duty to explain in detail to the defendant the relative
advantages or disadvantages of any projected appeal or
postconviction motions. The decision, of course, must be
the defendant's own.

To implement this policy, we direct trial courts, upon
the appointment of counsel, to inform the attorney that
his obligation continues until such time that the decision
is made to either appeal or to forego an appeal and until
relieved by the trial court. Following the conviction and
the pronouncement of sentence, we deem it obligatory
upon the judge not only to inform the defendant of his
right to appeal, but also to advise the defendant and his
attorney of the obligation of trial counsel to continue
his representation until the decision of whether to take an
appeal is made and until such time as appellate counsel
is appointed by this court. By so doing we will eliminate

---

appeal and the probable outcome of appealing. While counsel
should do what is needed to inform and advise his client, the
decision whether to appeal, like the decision whether to plead
guilty, must be the defendant's own choice.

"(c) Where a case has been tried, prior to final judgment,
defense counsel should review the prospects of appeal. One
alternative to be considered is whether it is in his client's interests
to seek mitigation in the grade of the offense or in the severity
of the sentence in exchange for a decision to forego appeal."

the unwitting waiver of defendants who, through no fault of their own, have foregone the right to address post-trial motions to the trial court. We also believe that this procedure will encourage the desirable policy that a trial judge be given the opportunity to correct any errors that may have occurred either in a trial to the court or to the jury.

*By the Court.*—Judgments and order affirmed.