STATE of Wisconsin, Plaintiff-Respondent,

v.

Todd E. PETERSON, Defendant-Appellant.

Court of Appeals

*No. 2007AP1867–CR. Submitted on briefs June 26, 2008.
—Decided August 20, 2008.*

2008 WI App 140

(Also reported in 757 N.W.2d 834.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ralph J. Sczygelski* of *Sczygelski Law Firm, LLC.*, Manitowoc.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Anderson, P.J., Snyder and Neubauer, JJ.

¶ 1. SNYDER, J. Todd E. Peterson appeals from a judgment and an order arising from his criminal conviction for sexual assault of a child. He contends that the judgment of conviction should be reversed because he received ineffective assistance of counsel at trial and that the court's evidentiary ruling on other acts evidence was error. Peterson also argues that the court improperly removed Peterson's privately retained postconviction counsel over Peterson's objection. We agree. The circuit court erroneously removed Peterson's retained counsel and required Peterson to continue the *Machner*[2] hearing with appointed counsel. We reverse the postconviction order and remand for further proceedings. In light of our remand for further postconviction proceedings, which will address Peterson's allegations of ineffective assistance of trial counsel, we do not reach the merits of Peterson's appeal from the judgment of conviction.

## BACKGROUND

¶ 2. On March 24, 2005, the State charged Peterson with one count of sexual assault of a male child under thirteen years of age as a persistent repeater. The

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

State moved to introduce other acts evidence at trial, submitting police reports to document previous incidents of Peterson sexually assaulting young female victims. On the eve of trial, the State disclosed that a new potential victim, a male, was just discovered. The State sought permission to introduce this new evidence at trial, but Peterson objected, arguing that he had been caught off guard. The court gave Peterson the option of (1) an adjournment to investigate the new information or (2) exclusion of the evidence with the understanding that the defense would not specifically argue that all of Peterson's other acts involved female victims.[3] Peterson chose the second option, and the court excluded the newly discovered evidence.

¶ 3. On February 21, 2006, after a two-day trial, the jury found Peterson guilty of first-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(1) (2003–04).[4] Because Peterson had been charged as a persistent repeater, the court sentenced him to life imprisonment without the possibility of extended supervision.

¶ 4. Peterson then retained Attorney Gregory Petit to represent him at a postconviction *Machner* hearing. Peterson moved for a new trial on several grounds, including ineffective assistance of trial counsel. Peterson's trial counsel had been Leonard Kachinsky, a former law partner of Gregory Petit. At the motion hearing on September 21, 2006, the circuit court sua sponte disqualified Petit on grounds that there was the

---

[3] The State offered evidence of Peterson's three prior assaults on young girls.

[4] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise stated.

appearance of a conflict of interest relating to the acrimonious dissolution of the law partnership.

¶ 5. Peterson then obtained representation through the State Public Defender and proceeded to the postconviction evidentiary hearing on March 15, 2007. The ineffective assistance of trial counsel arguments presented at that hearing were drawn from Petit's original motion for relief. The circuit court issued its ruling on the record on May 23, 2007, and denied Peterson's postconviction motion in its entirety. Peterson appeals from the judgment of conviction and from the order denying his postconviction motion.

## DISCUSSION

¶ 6. Peterson presents three primary issues on appeal. First, he argues that the judgment of conviction should be vacated because he did not receive effective assistance of counsel. Next, he argues that the court's decision to allow three of five proffered other acts into evidence was based on an incomplete legal analysis under *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). Finally, he contends that the circuit court's sua sponte removal of his privately retained counsel at the postconviction hearing was error. We begin with the third issue.

■■

¶ 7. In an effort to demonstrate error by the circuit court, Peterson makes reference to the Sixth Amendment right to counsel, but develops little argument from it. In *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), the Supreme Court explained that the right to counsel derived from the Sixth Amendment includes "the right of a defendant who does not require appointed counsel to choose who will represent him."

*Id.* at 144. "[T]he Sixth Amendment right to counsel of choice . . . commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he [or she] believes to be best." *Id.* at 146. However, *Gonzalez-Lopez* makes clear that the right to counsel of choice is not unlimited:

> We have recognized the trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness . . . . The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."

*Id.* at 152 (citations omitted). Thus, under the Sixth Amendment, a defendant has only a presumptive right to employ his or her own chosen counsel. *See Wheat v. United States*, 486 U.S. 153, 159, 164 (1988).

¶ 8. Our supreme court addressed disqualification of a defendant's retained counsel of choice in *State v. Miller*, 160 Wis. 2d 646, 467 N.W.2d 118 (1991). *Miller* makes clear that the circuit court has the discretion to disqualify a defendant's counsel of choice for a conflict of interest even when the defendant will voluntarily waive the conflict. *Id.* at 650. *Miller* reconciles the competing policy interests of a defendant's Sixth Amendment right to representation by counsel of choice with countervailing interests in maintaining the integrity of the judicial system. *See id.* at 652–53. *Miller* also confirmed the principle espoused in *Wheat*, that a presumption favoring the defendant's choice exists. *See Miller*, 160 Wis. 2d at 652; *Wheat*, 486 U.S. at 164.

¶ 9. The State correctly counters that *Miller* and *Gonzalez-Lopez* involved the right to counsel of choice at trial. Here, Peterson was postconviction, at a *Mach-*

197

*ner* proceeding. The State asserts that the Sixth Amendment right to counsel is the wrong standard to apply; rather, the right to appellate counsel derives from the Equal Protection Clause of the Fourteenth Amendment. *See Douglas v. California,* 372 U.S. 353, 356–57 (1963) (when merits of the only appeal an indigent has as of right are decided without benefit of counsel, an unconstitutional line has been drawn between rich and poor). The State points out, "[U]nlike the qualified Sixth Amendment right to retained counsel of choice *at trial,* there is no comparable Sixth Amendment right to counsel on direct appeal of a state conviction." *See Martinez v. Court of Appeal of California,* 528 U.S. 152, 159–60 (2000) (Sixth Amendment rights are available in preparation for trial and at the trial itself, it does not include any right to appeal); *Tamalini v. Stewart,* 249 F.3d 895, 902 (9th Cir. 2001) (states are not required to provide appellate review; therefore a convicted defendant has no right to counsel of choice on appeal).

¶ 10. *Martinez* and *Tamalini* provide no guidance on the question presented. The issue here arose not on direct appeal under WIS. STAT. § 808.03, but rather when Peterson pursued postconviction relief *in the circuit court. See* WIS. STAT. § 808.01(1) ("appeal" means review in an appellate court). We also observe that in Wisconsin a convicted person has the right to postconviction assistance of counsel. *See* WIS. STAT. § 809.30(2)(a) (counsel representing defendant at sentencing "shall continue representation" if the defendant desires to pursue postconviction relief unless counsel is discharged by the defendant or allowed to withdraw by the circuit court); *see also* WIS. STAT. § 809.30(2)(e) (within thirty days after receiving required postconvic-

198

tion materials from the clerk of courts, state public defender "shall appoint counsel" for indigent offender).

¶ 11. We have located no Wisconsin case directly on point; that is, addressing the right to be represented by retained counsel of choice during postconviction proceedings in the circuit court. Neither party has offered any mandatory authority for deciding the question. Nonetheless, sufficient guidance exists in Sixth and Fourteenth Amendment case law to indicate that a person has a qualified right to counsel of choice. For example, in *Whitmore v. State*, 56 Wis. 2d 706, 718, 203 N.W.2d 56 (1973), the supreme court acknowledged the gap between the time of conviction and the deadline for a notice of appeal, stating that "[d]uring the limbo thus created, valuable rights of the defendant may well be lost." To resolve this, the court held:

> It is the obligation of trial counsel to continue his [or her] representation of the defendant during this stage of the proceedings and assist the defendant in making a reasonable decision. He [or she] has the duty to explain in detail to the defendant the relative advantages or disadvantages of any projected appeal or post-conviction motions.

*Id.* at 719. Because of the inconsistency[5] with which attorneys were interpreting the *Whitmore* requirement, the supreme court enacted a rule that provided more

---

[5] After *Whitmore v. State*, 56 Wis. 2d 706, 203 N.W.2d 56 (1973), some attorneys could interpret their duty to "continue to represent" a client as a duty to answer questions, to assist the client with his or her affairs prior to incarceration, or to simply complete postsentencing paperwork. *See* Susan R. Monkmeyer, *The Decision to Appeal a Criminal Conviction: Bridging the Gap Between the Obligations of Trial and Appellate Counsel*, 1986 WIS. L. REV. 399, 404 (1986).

specific language regarding the right to postconviction counsel. As of July 1, 1985, it is a circuit court's duty to advise a convicted person as follows:

> You have the right to seek postconviction relief in this court or in the Wisconsin Court of Appeals . . . . It is your trial lawyer's responsibility to assist you in making this decision and, if you wish to seek postconviction relief, to file the necessary notice in this court.
>
> If you wish to seek postconviction relief but cannot afford a lawyer, you have the right to request that a public defender be appointed to assist you.

WIS JI—CRIMINAL SM 33. It is apparent from the *Whitmore* case and SM 33 that Wisconsin affords a convicted person the right to postconviction counsel. It would be absurd to suggest that a person has a right to counsel at trial and a right to counsel on appeal, but no right to the assistance of counsel at a postconviction proceeding in the circuit court, which is often the precursor to and augments the record for an appeal.

¶ 12. When considering whether the right to counsel at a *Machner* hearing is derived from the Fourteenth Amendment, as in *Douglas*, or from the Sixth Amendment, as in *Gonzalez-Lopez*, *Wheat*, and *Miller*, we observe that the *Machner* proceeding is much more akin to a trial than an appeal. At a *Machner* hearing, the defendant must present witness testimony to support his claims and the court must rule on the admissibility of evidence. Zealous advocacy of the sort normally seen at trial is expected; for example, direct examination of witnesses, effective cross-examination of witnesses, introduction of documentary evidence, prompt objections to preserve issues for appeal, and so forth. Accordingly, Sixth Amendment balancing principles guide our review of Peterson's right to counsel of choice at the *Machner* hearing.

¶ 13. There are countervailing interests at play in any criminal proceeding, and thus the right to counsel of choice is "circumscribed in several important respects." *Wheat*, 486 U.S. at 159 (applying the Sixth Amendment right to counsel). The Supreme Court has provided guidance for courts who must recognize when a defendant is not entitled to counsel of choice; specifically, a defendant does not have the right to be represented by (1) an attorney he or she cannot afford, (2) an attorney who is not willing to represent the defendant, (3) an attorney with a conflict of interest, or (4) an advocate who is not a member of the bar. *See id.* The best indication we have of the standard employed by the circuit court when it addressed the concern here is the following statement:

> I have a concern and I guess I want to put this right out front that there is a conflict here, meaning, the conflict of the relationship between Mr. Petit and Mr. Kachinsky. Everybody knows the history there, and I want to be confident in my view that that does not come into play here . . . .

Because the circuit court was concerned about the potential for a conflict of interest and the appearance of fairness, we ascertain no error in the circuit court's decision to raise the issue. In *Miller*, our supreme court held, "An actual conflict or serious potential for conflict of interest imperils the accused's right to adequate representation and jeopardizes the integrity of the adversarial trial process and the prospect of a fair trial with a just, reliable result." *Miller*, 160 Wis. 2d at 653.

¶ 14. Whether disqualification of an attorney is required in a particular case involves an exercise of the circuit court's discretion. *State v. Tkacz*, 2002 WI App

281, ¶ 8, 258 Wis. 2d 611, 654 N.W.2d 37. Because the circuit court's decision is a discretionary one, we review the court's ruling to determine whether it was erroneous. *See Miller,* 160 Wis. 2d at 654. The court does not have unfettered freedom to deprive a defendant of his retained counsel, however. The court must apply the appropriate legal standards to the facts and state its reasoning on the record. *Id.* The resolution of this issue, therefore, rests on whether the court—on its own motion —properly removed Petit by balancing Peterson's right to be represented by his retained counsel against the court's interest in the appearance of fairness and diffusing what it characterized as a potential conflict.

¶ 15. The dispute here arose from a coincidental series of events. The circuit court judge was aware that Petit and his former law partner, Kachinsky, had parted ways in a negative and somewhat public manner, which included legal action to settle a certain claim between them. The court knew that Kachinsky had been decertified on a previous public defender case, and assumed that Petit was familiar with the details of that event.[6] The court also knew that Petit had sent a letter about Kachinsky to the local district attorney.[7] Just prior to the start of the *Machner* hearing, the judge happened to overhear his judicial assistant marking an exhibit for

---

[6] The public defender letter associated with this event and referenced in this opinion was never admitted into evidence and therefore only its existence, not its content, is verifiable from the record.

[7] The record is unclear as to whether the letter was sent to the Waukesha County District Attorney or to the Winnebago County District Attorney. Regardless, the court stated its understanding that the district attorney "has indicated that no charges are going to be filed" against Kachinsky as a result of that letter.

Petit. The judge used that information as a spring board for voicing his concerns to the parties once the hearing began. The court explained its concerns as follows:

> Part of the problem is I don't know what is all going to [be] laid out here until it happens. I think that is part of the problem . . . . [T]he concern that I have is that relationship [Petit has] had with Mr. Kachinsky and the professional relationship. There is a dissolution of a law firm; there is a referral . . . regarding your request to have him looked at criminally . . . .
>
> . . . .
>
> In no way whatsoever am I making an implication of any wrongdoing here, all right? I want to make that clear. But . . . I am concerned no matter what I do after I hear all of the evidence that either way somebody is going to look at this and say it was not fair. And it was not fair either to Mr. Peterson, it was not fair to the State, and I think to avoid that whole thing I just think we are better off allowing another attorney to represent Mr. Peterson.
>
> . . . .
>
> I am not making any kind of a judgment of an ethical situation. What I am trying to avoid down the road is somebody saying there was, or, you know, that it at least should have been addressed by the Court at the time . . . . I have no opinion about wrongdoing, I do not believe that there is anything unethical, and I want to make that clear. What I don't want to do is be coming back here again on the same type of motion either way I rule.

¶ 16. During the hearing, Petit informed the court that he had talked to Peterson and Peterson's family about his past business relationship with Kachinsky. He told the Petersons that the dissolution of

203

the law firm at times "was rocky." Petit explained, however, that he did not believe there was personal animosity between himself and Kachinsky. Petit stated, "I would love to hear or have someone come forward [who] said I was ever disrespectful or discourteous to Mr. Kachinsky in writing or not in writing, on or off the record, because I believe I have kept it above board and ethical in my practice." He conceded that some things "did get heated," but characterized the dispute as more vitriolic between Kachinsky and a third law partner.

¶ 17. With regard to the exhibit that was marked prior to the hearing, specifically the public defender's letter regarding Kachinsky, Petit stated, "[A]ny exhibits I have marked and any exhibits I intend to present have nothing to do with animosity between myself and Attorney Kachinsky." He argued to the court that awards to bolster the trial attorney's credibility or disciplinary actions to undermine it were the type of exhibits regularly introduced at *Machner* hearings. Petit indicated that he had consulted the code of professional responsibility for lawyers and found nothing that indicated he had a conflict that would prevent him from representing Peterson postconviction. He further asserted that the rules of evidence would not prevent the public defender letter from being admitted.

¶ 18. Initially, the State indicated that it did have some concerns and did not want to "keep doing this" if Peterson used Petit's past relationship with Kachinsky to argue for a new hearing later. Subsequently, the prosecutor asserted that she was "going to leave that [issue of whether to disqualify Petit] to the Court's discretion," and was "not going to get into the middle of that particular issue." On appeal, the State takes the position that removing Petit as postconviction counsel was neither favorable nor unfavorable to the State

because the State had no direct stake in whether Petit represented Peterson on appeal.[8]

¶ 19. It is unclear what Peterson's position on the issue was at the *Machner* hearing, because the court did not engage in a meaningful dialogue with Peterson before making its decision. Of the twenty-three pages of hearing transcript on the court's sua sponte motion to remove Petit, Peterson's words account for just two lines. The court, having made its decision to remove Petit, asked Peterson if he had any questions. Peterson, who heard the court reference an adjourned hearing date two to three months in the future, responded that he did not like the fact that the hearing was going to be on a date "so far away."

¶ 20. At the adjourned hearing with his appointed counsel, Peterson contested the court's removal of Petit and asked that Petit be reinstated. The court responded:

> [M]y concern at the time that I brought forward to Mr. Petit was that there were some ongoing, and I am going to call it, a feud between Mr. Petit and Mr. Kachinsky and when I brought up that issue I wanted it addressed

[8] The State does suggest, however, that Peterson could not afford to have Petit represent him and, therefore, he had no right to counsel of choice. *See United States v. Gonzalez-Lopez,* 548 U.S. 140, 151 (2006) (the right to counsel of choice does not extend to defendants who require appointed counsel). The State suggests that Petit would not continue representing Peterson and quotes Petit as saying, "I am not doing [the appeal] pro bono." This quote is taken out of context. When the court asked Petit if he was being paid, he answered: "[A]t this point [the Petersons] are making their best effort. I have certainly been paid out front monies, I am not doing it pro bono, so certainly they are making payments, but at this point he would not be able to start from square one."

in open court, and everybody had their opportunity to talk about it and what they thought about it, and the bottom line is it came down [to] . . . Mr. Petit thought that he could continue to be on the case, he understood why I was concerned about that potential conflict . . . . And it leads me to believe that we are better off having individual attorneys who have no say against the other attorney . . . . [I]t was my position that that could create problems from a standpoint of fairness.

I understand defendants have a right to pick their counsel but I think that the Court also has an obligation to the public to show that when there are proceedings that they are being done for legitimate legal reasons and I was concerned about the appearance of that . . . .

¶ 21. Our review of the transcripts reveals little about what the circuit court feared would happen at the *Machner* hearing; specifically, what risk Petit's representation posed to Peterson or to the integrity of the judicial system. The State directs us to SCR 20:1.7(a)(2) (2007), which provides that an attorney shall not represent a client if "there is a significant risk that the representation . . . will be materially limited . . . by a personal interest of the lawyer." However, the court did not find, and the State does not argue, that Petit's ability to represent Peterson on appeal was dictated or motivated by a personal interest in disparaging Kachinsky. Rather, the State argues that some of Petit's "allegations come close," and points to the public defender letter, Petit's letter to the district attorney, and Petit's earlier suggestion that Kachinsky had a conflict of interest during his representation of Peterson.

¶ 22. The record reveals that Peterson was aware of the prior business relationship between Petit and Kachinsky. Further, Petit's professional association

206

with Kachinsky ended before Peterson's case was initiated. As to the controversial exhibits, Petit proposed to introduce documents relating to Kachinsky's credibility, which could be offered by another attorney in the same position. The decision on whether to admit the exhibits would rest with the court regardless of who represented Peterson.[9] We also observe that the circuit court explicitly refused to find any violation of the code of professional responsibility was looming. It stated, "I do not believe that there is anything unethical, and I want to make that clear."

¶ 23. A sua sponte disqualification inquiry presents a palpable risk of unfairly denying a party the right to retain counsel of his or her choosing. "The right to retained counsel of choice is supported by three basic tenets of our adversary system: trust, autonomy, and fairness." Janet C. Hoeffel, *Toward a More Robust Right to Counsel of Choice,* 44 SAN DIEGO L. REV. 525, 540 (Summer 2007). "Basic trust between counsel and defendant is the cornerstone of the adversary system . . . ." *Linton v. Perini,* 656 F.2d 207, 212 (6th Cir. 1981). Notwithstanding the importance of preserving the integrity of the courts and the confidence of the public, attorney disqualification should not be imposed cavalierly. Here, the court did not explain what problem it anticipated if Petit continued, the court did not describe any potential ethical violation that might arise, and the court did not engage in any sort of dialogue with Peterson before deciding to disqualify Petit. Moreover, the

---

[9] In fact, at the *Machner* hearing with appointed counsel, Peterson did attempt to introduce into evidence the public defender letter along with other character evidence to attack Kachinsky's credibility. The court did not allow the evidence to come in.

circuit court would have had the same opportunity to rule on the admissibility of the evidence and to control the tenor of the proceedings regardless of whether Petit continued as Peterson's advocate or another attorney stepped in. Accordingly, the court's decision to disqualify Petit was an erroneous exercise of discretion.

## CONCLUSION

¶ 24. Our review of the record and our application of constitutional principles addressing fairness in our adversarial system lead us to conclude that the court improperly disqualified Petit. The court's comments do not convince us that it balanced Peterson's right to be represented by his retained counsel against the court's interest in the appearance of fairness and diffusing what it characterized as a potential conflict. The record contains little reference to Peterson's interests, which should have been clearly addressed by the court. Accordingly, we reverse the order denying postconviction relief, specifically with regard to the court's disqualification of Petit as counsel. We remand the matter for further proceedings. We do not reach the merits of Peterson's appeal from the judgment of conviction because that portion of his appeal largely relies on claims of ineffective assistance of trial counsel. The ineffective assistance claims will be the subject of the proceedings on remand, thus our review here would be premature.

*By the Court.*—Order reversed and cause remanded with directions.