COURT OF APPEALS
DECISION
DATED AND FILED

March 24, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP370-CR**

Cir. Ct. No. 2018CF6044

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TERRANCE L. MILLIGHAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Terrance L. Millighan appeals the judgment convicting him of first-degree sexual assault—sexual contact with a person under age 13.  He also appeals the order denying his motion for postconviction relief. We reject Millighan's numerous claims of ineffective assistance of counsel and affirm.

## BACKGROUND

¶2     This case involves allegations of sexual assault made by J.H. against Millighan, who was her mother's live-in boyfriend and the father of three of her half-brothers.  The State charged Millighan with one count of first-degree sexual assault of a child—sexual intercourse.  J.H.'s mother was charged with knowing about the abuse and failing to act.

¶3     Milligan and J.H.'s mother's cases proceeded to trial together.  The jury convicted Millighan of first-degree sexual assault of a child—sexual contact.[1] The circuit court sentenced him to 22 years of initial confinement and 10 years of extended supervision.

¶4     Millighan sought postconviction relief based on ten claims of ineffective assistance of trial counsel and a potential ***Brady*** issue.[2]  *See **Brady v. Maryland***, 373 U.S. 83, 87 (1963).  In a 16-page written decision, the circuit court denied six of Millighan's ineffective assistance claims without a hearing on grounds that they were insufficiently pled or belied by the record.

---

[1] During trial, the State amended the charge from "sexual intercourse" to "sexual contact."

[2] Millighan abandons the ***Brady*** issue on appeal.

¶5    Following an evidentiary hearing on Millighan's remaining claims, the circuit court denied the motion. This appeal follows. Additional background information relevant to this court's analysis is provided below.

## DISCUSSION

¶6    To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must show that counsel's actions or omissions "fell below an objective standard of reasonableness." *Id.* at 687-88. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a defendant fails to make a sufficient showing on one prong of the *Strickland* test, a reviewing court need not address the other. *Id.* at 697.

¶7    A claim of ineffective assistance of counsel presents a mixed question of law and fact. *State v. Domke*, 2011 WI 95, ¶33, 337 Wis. 2d 268, 805 N.W.2d 364. We will uphold the circuit court's findings of fact, which include "the circumstances of the case and counsel's conduct and strategy, unless they are clearly erroneous." *Id.* (citation modified). Whether a defendant carried his or her burden to establish deficient performance and prejudice is an issue of law reviewed de novo. *Id.*

¶8    A defendant who alleges ineffective assistance of counsel must seek to preserve counsel's testimony in a postconviction hearing. *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). The defendant, however, is not automatically entitled to such a hearing. *State v. Allen*, 2004 WI 106, ¶14, 274

Wis. 2d 568, 682 N.W.2d 433. Rather, the circuit court is required to hold an evidentiary hearing only if the defendant has alleged, within the four corners of the postconviction motion, sufficient material facts that, if true, would entitle the defendant to relief. *Id.*, ¶¶14, 23. Whether a postconviction motion alleges sufficient material facts to require a hearing is a question of law that we review de novo. *Id.*, ¶9.

¶9 If a postconviction motion "does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432. "In other words, if the record conclusively demonstrates that the defendant is not entitled to relief, then either option—holding a hearing or not—is within the circuit court's discretion. We review discretionary decisions for an erroneous exercise of discretion." *Id.*

### I. The circuit court properly denied six of Millighan's claims without a hearing.

¶10 The circuit court correctly concluded that Claims 1, 4, 6, 8, 9, and 10 failed to meet the requisite pleading standard and, consequently, did not warrant a hearing. We address each in turn.[3]

#### A. Claim 1

¶11 For Claim 1, Millighan argued that trial counsel performed deficiently by failing to assert that the circuit court improperly relied on the

---

[3] Like the State, we identify the claims by the numbering used in the circuit court's written order denying Millighan's postconviction motion in part and granting the motion in part.

testimony of J.H.'s grandfather when it ruled on how J.H.'s testimony would be presented.

¶12    At the start of trial, the jury was informed that Millighan was charged with first-degree sexual assault of a child and that J.H.'s mother was charged with knowingly failing to protect J.H. from assault.  J.H.'s paternal grandfather was the State's first witness.  He described how J.H. came to stay at the house in July 2018; J.H.'s grandmother and J.H.'s father also lived there.

¶13    J.H.'s grandfather testified about an incident when he saw J.H. react with fear to her mother's arrival, start shaking, and run to hide in a closet.  He testified: "Her mother scared her to death.  And she's still terrified of her mother to this day."

¶14    Nine-year-old J.H. took the stand next.  The transcript reflects that the circuit court addressed J.H. and got only a partial answer.  The court then excused the jury and took a short break before describing the events that had transpired:

> So when [J.H.] came in and was stepping on to the witness stand, she looked over at the defense table and began to cry—cry fairly heavily.  When she got on to the witness stand, she began to cry even more heavily when she again looked at the defense table.  She was comforted by the victim witness advocate for about four minutes.
>
> It was [then] that we took a break.…  And I began to chat with her and I asked her to do a couple of things.  And she—that's when she broke down again.  My intent was going to be to ask her to promise to tell the truth, and then use the microphone, and so on.

The court added that it had observed, from about three feet away from J.H., "that her reaction was triggered by seeing the defendants and being in the same room as the defendants."

¶15    The circuit court subsequently sent the jury home for the day. The following day, the court heard argument from the parties as to the permissibility of having J.H. provide closed-circuit testimony. *See* WIS. STAT. § 972.11(2m) (2023-24).[4]

¶16    The State argued that this was "an exceptional case with an exceptional amount of trauma to this child, and having to testify not only about the sexual assault that the defendant Millighan did to her, but also having to testify about [sic] her mom sat there and ignored it is exceedingly traumatic for her[.]" In contrast, trial counsel's position was that "what everyone saw here is not because of trauma that actually happened. It's because [J.H.] didn't want to lie."

¶17    The circuit court, without the jury present, set forth the constitutional and statutory law relevant to its determination. The court stated that it had considered the following: the content of two videotaped forensic interviews of J.H., which the court had watched; the testimony of J.H.'s grandfather about J.H.'s fear of her mother; and "the experience of having seen [J.H.] in the courtroom." After making extensive findings concerning the events of the preceding day, the court additionally found that J.H. "would be traumatized by not the courtroom in general, but by the presence of the defendants and that some alternate procedure is necessary to protect her welfare."

---

[4] The current version of WIS. STAT. § 972.11(2m)(a) (2023-24) is the same as it was at the time of Millighan's trial in 2019. That subsection provides that at a trial in a criminal prosecution, "the court may, on its own motion or on the motion of any party, order that the testimony of any child witness be taken in a room other than the courtroom and simultaneously televised in the courtroom by means of closed-circuit audiovisual equipment" if certain requirements are satisfied.

¶18   The circuit court concluded: "We will not be able to secure [J.H.'s] testimony at all if she is required to testify in the courtroom. The only way to obtain her uninhibited truthful testimony is through the use of a closed-circuit audiovisual procedure." J.H. then proceeded to provide closed-circuit testimony.

¶19   In his postconviction motion, Millighan argued that when the court accepted the testimony of J.H.'s grandfather as proof that J.H. was being traumatized by her parents, it made a credibility determination "in clear view of the jury," who had already heard the grandfather's testimony at that point in the trial.

¶20   In its postconviction ruling on Claim 1, the circuit court concluded that the claim failed because it inaccurately represented what happened in the record. The court explained that the record showed that the jury was excused during the discussions on the manner of J.H.'s testimony. The court's reliance on the testimony thus could not have influenced the jury's view of the grandfather's testimony, which was the basis for Millighan's assertion of trial counsel's deficient performance and prejudice.[5] Millighan's claim fails because the record conclusively demonstrates that the jury was never exposed to the court's

_____

[5] Millighan included in this claim a separate argument that the circuit court erred when, "in an effort to make [J.H.] more comfortable as a witness," the court denied his constitutional right to confront his accuser. He renews this claim on appeal, asserting that the court should have ordered a mistrial and secured a new jury panel that was not tainted by "the unusual rulings." In denying Millighan's postconviction motion, the circuit court explained that it had "already considered but rejected the defense request for a mistrial, as well as the request for a new panel" and stood by those rulings. Millighan has not convinced us that the circuit court's rulings were in error. Modifying the manner of live testimony is allowed in some circumstances. *See Maryland v. Craig*, 497 U.S. 836, 855-56 (1990) (holding that if it is "the presence of the defendant that causes the [courtroom] trauma," a court may properly deny a defendant the right to face-to-face confrontation). This claim does not warrant further discussion.

consideration of the grandfather's testimony and therefore could not have been affected by it. *See **Ruffin***, 401 Wis. 2d 619, ¶28.

### B. Claim 4

¶21 For Claim 4, Millighan asserted, in a one-paragraph argument, that trial counsel "erred as a matter of law for not impeaching [J.H.'s grandfather]" with statements he made about J.H.'s mother to the Division of Milwaukee Child Protective Services (DMCPS).

¶22 As previously detailed, J.H.'s grandfather testified about an incident when he saw J.H. react with fear to her mother's arrival, start shaking, and run to hide in a closet. Millighan argued that when the matter was originally reported to DMCPS, "it was stated by the family that J.H. was fearful when her mother came to the home, but that she was 'immediately tucked in a corner,' not a closet in the bedroom as [the grandfather] testified to." Millighan additionally alleged that the grandfather provided false information to DMCPS by informing the investigating worker that his son, J.H.'s father, had placement of J.H. instead of properly explaining that J.H.'s parents had shared custody.

¶23 The circuit court concluded that the allegation in the motion "does not sufficiently allege deficient performance or prejudice." The motion alleged nothing more than that counsel did not do something, which is not sufficient to overcome the strong presumption that counsel performed reasonably. *See **State v. Balliette***, 2011 WI 79, ¶¶22, 25-28, 67, 78, 336 Wis. 2d 358, 805 N.W.2d 334. We agree.

*C. Claim 6*

¶24 Millighan's Claim 6 was that trial counsel performed deficiently in his arguments to the circuit court when certain hearsay testimony was admitted under the residual hearsay exception. Millighan claimed that counsel "should have strenuously objected to the admission of this testimony, citing the test in ***State v. Sorenson***," 143 Wis. 2d 226, 245-46, 421 N.W.2d 77 (1988), which requires a circuit court to consider five factors before admitting such evidence.

¶25 The record conclusively demonstrates that Millighan is not entitled to relief on this claim. The trial transcript shows that trial counsel "directly challenged" the admissibility of the testimony at issue under the ***Sorenson*** factors, and the circuit court detailed its analysis under the factors before deeming the testimony admissible. The motion failed to sufficiently allege that counsel performed deficiently on this point, given that the record shows that counsel objected and argued the law which the motion alleges he overlooked. *See* ***Balliette***, 336 Wis. 2d 358, ¶22 (explaining that deficient performance is not shown "simply by demonstrating that … counsel was imperfect or less than ideal").[6]

*D. Claim 8*

¶26 For Claim 8, Millighan argued that trial counsel was ineffective for not raising a ***Haseltine*** objection to forensic interviewer Lynn Cook's testimony.

---

[6] Millighan included a one-sentence argument that the circuit court erred in additionally permitting the evidence to be admitted as a prior inconsistent statement. To the extent Millighan renews this one-sentence argument on appeal, we deem it undeveloped and will not discuss it further. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

*See State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984) ("No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth."). Millighan contended that trial counsel performed deficiently by failing to object when, on redirect examination, the State asked Cook about the significance of a child's use of "multiple ways" to communicate, "such as drawing or doing gestures or using their words and then also writing[.]" Millighan argued that the following answers by Cook—that "it's something that helps me know that the child's retrieving memories" and "they're not just repeating statements"—constituted impermissible *Haseltine* vouching testimony. According to Millighan, Cook "essentially testified that [J.H.] was 'retrieving memories'" when providing her responses during the interview and at trial, and that Cook "declared [J.H.] credible."

¶27 In its decision, the circuit court explained that the record showed that Cook "did not vouch for J.H.'s truthfulness or credibility and she did not testify to whether the charged crimes occurred," "nor did she label J.H.'s accusations as truthful or retrieved memories." Based on the testimony, the court concluded that "even if an objection had been made, it would have been overruled." The record supports the court's assessment of Cook's testimony. Counsel is not ineffective for failing to raise a meritless objection. *State v. Berggren*, 2009 WI App 82, ¶21, 320 Wis.2d 209, 769 N.W.2d 110.

### E. Claim 9

¶28 Millighan additionally asserts in Claim 9 that trial counsel was ineffective for not raising a *Daubert* objection to Cook's testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) (providing that under the federal equivalent to WIS. STAT. § 907.02, the circuit court serves as a gatekeeper

10

to ensure that scientific testimony is both relevant and reliable). He claims Cook provided expert testimony, even though the State did not seek to have her qualified as an expert, regarding the potential for suggestibility in children and the relevance of certain modes of disclosure.

¶29 Like the circuit court, we conclude that the claims in the motion are not supported by the testimony in the record. First, Millighan's claim that Cook was "a witness with unknown qualifications" is refuted by the testimony concerning her qualifications. Next, while Millighan's motion alleged that Cook made "categorical claims about the susceptibility of children to outside influences," the court noted that the motion did not point to any such claims. Instead, the court concluded that "[t]he record reflects that Cook did not make any 'categorical claims' that children are not susceptible to outside influences." Having reviewed the record, we again agree with the circuit court's conclusion.

¶30 The circuit court additionally explained that even if trial counsel had pursued a *Daubert* hearing, Cook's testimony would have been admitted. Millighan's postconviction motion failed to allege sufficient facts that trial counsel's failure to make a *Daubert* objection constituted deficient performance. *See Berggren*, 320 Wis. 2d 209, ¶21.

### F. Claim 10

¶31 In Claim 10, Millighan argues trial counsel was ineffective for not objecting to the presence of members of the "Guardians of the Children" motorcycle club at the trial or moving for a mistrial after a mid-trial hallway disruption by a member of the public.

¶32    After the State had rested its case-in-chief, during a break when the jury was out of the courtroom, the circuit court was alerted to a disturbance in the hallway. The State informed the court that someone seemingly unconnected with the trial had yelled things while the jury was in the vicinity. The court took testimony, outside the jury's presence, from a witness to the incident. The witness described hearing someone say "he's guilty, don't let him go, hang him, you know he did it." The witness indicated that he did not know if any of the jurors heard the remarks.

¶33    Following the witness's testimony, the circuit court offered two courses of action for trial counsel to choose from: not do anything, "out of concern that the jury may not have heard anything"; or, provide a curative instruction. Trial counsel chose the latter, and the instruction provided:

> While you all were walking over here there was some prankster in the hallway that was yelling stuff out and kind of being a jerk. I don't even know if any of you heard it. It's not a big deal if you did or if you didn't, I'm just going to remind you that of course you have to base your verdicts just on the evidence that is heard here in court. Anything you hear or see outside the courtroom is not evidence and … you're not allowed to consider anything else in reaching your verdicts.
>
> Does everybody understand[] that? It was just some jerk in the hallway that was just causing a ruckus. And it doesn't sound like you even heard it[.]

¶34    In its postconviction ruling on Millighan's claim that trial counsel should have moved for a mistrial, the circuit court explained that trial counsel "chose a remedial course of action" and the court's instruction "erased any possible prejudice." *See* **State v. Truax**, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989) ("We presume that the jury follows the instructions given to it."). Given that curative instructions are presumed to be sufficient to ameliorate

prejudice, we agree that trial counsel was not ineffective on this basis. *See State v. Gary M.B.*, 2004 WI 33, ¶33, 270 Wis. 2d 62, 676 N.W.2d 475.

¶35    Millighan additionally challenged trial counsel's failure to object to the presence in the courtroom gallery of a "sizeable" group of individuals "believed to be" Guardians of the Children members. Like the circuit court, we conclude that Millighan's postconviction motion did not raise facts sufficient to entitle Millighan to relief on his claim that there was an unacceptable risk of influence on the jury due to the presence of such individuals in the gallery. *See Ruffin*, 401 Wis. 2d 619, ¶28.

## II. The circuit court properly denied Millighan's remaining claims following a *Machner* hearing.

¶36    We turn our attention to the four ineffective assistance claims that were the subject of the *Machner* hearing: Claims 2, 3, 5, and 7. Millighan's trial counsel, Millighan, and social worker Scott Ebert provided testimony at the hearing.

¶37    At the outset we note that "where a lower court determines that counsel had a reasonable trial strategy, the strategy 'is virtually unassailable in an ineffective assistance of counsel analysis.'" *State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (citation omitted). A strategic choice crosses that line when it is "based on an irrational trial tactic or based upon caprice rather than upon judgment." *Id.* (citation omitted).

*A. Claim 2*

¶38    In Claim 2, Millighan challenged trial counsel's decision not to object to J.H.'s written testimony on direct examination and the prosecutor's procedure of reading J.H.'s answers into the record.

¶39    Following the circuit court's ruling permitting J.H. to provide closed-circuit testimony, the prosecutor began her direct examination. Just a few questions into J.H.'s testimony, the prosecutor inquired of J.H.: "[I]s this something that's really hard to talk about? I'm sorry, sweetie, you have to answer out loud." Then the State asked J.H. if it would be "easier" for her to write down her testimony instead of speaking the words. J.H. stated that it would. The court paused the testimony, and a recess was taken for lunch. When the trial resumed, the prosecutor again asked J.H. if she preferred to write her answers down. J.H. confirmed that this was her preference. The prosecutor then asked the court to permit J.H. to proceed by writing her answers and to allow a victim advocate to read J.H.'s answers.

¶40    The circuit court implicitly granted the request for written testimony, advising the prosecutor that the writing would be a "demonstrative exhibit." The court said that after the answer was written, it should be shown to the defense, and then the prosecutor could ask questions about it. The court stated: "I think that [the] best practice would be to use that approach rather than to have another party read what was written." The prosecutor began asking J.H. questions orally again, with J.H. writing her responses.

¶41    In those answers, J.H. testified that Millighan touched her genitals with his hand under her clothes, that he touched her "behind" with his penis, and that he made her "rub" his penis with her hand. During a break in J.H.'s direct

examination, the circuit court discussed with the parties the written answers, which were being read aloud by the prosecutor, confirmed with the witness, and shown to defense counsel. The parties agreed to continue that process. The prosecutor asked the court to "confirm with [c]ounsel that I have been reading the answers thus far … accurately." The attorneys for the defendants confirmed that she had.

¶42 In his postconviction motion, Millighan argued that "[t]he procedure that was utilized is even more problematic as it allowed the State, the party offering J.H. as a witness, the opportunity to both lead the testimony of J.H. through its questions and then provide that testimony to the jury with its own reflection [sic] and tone."

¶43 During the *Machner* hearing, trial counsel testified about his rationale for not objecting to the circuit court's decision to permit J.H. to answer some questions in writing. Trial counsel referenced the legal authority authorizing courts to modify procedures in cases involving children. He described the unusual circumstances presented by J.H.'s reaction to facing the two defendants: "[J.H.] … looked at the [defendants] and just broke down right after…. That was bad." He noted that J.H. answered all questions on cross-examination verbally. Trial counsel additionally testified that he had objected to the closed-circuit testimony and was overruled. Trial counsel explained his belief that there was little to gain from an objection under the circumstances presented.

¶44 The circuit court found that "with respect to whether [trial counsel] should have objected or not, this was uncharted waters for everybody that was involved[.]" The court found that trial counsel's approach to the issue was reasonable. We likewise conclude that Millighan has not shown that trial

counsel's decision not to object "fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 687-88.

### B. Claim 3

¶45 Millighan asserted in Claim 3 that trial counsel was ineffective for not showing the jury the first forensic interview in which J.H. denied inappropriate touching by Millighan.

¶46 When asked why he did not show the jury the video of a forensic interview in which J.H. denied that she had been sexually abused, trial counsel testified that in that interview J.H. described "pretty graphic and pretty nasty physical abuse" by Millighan. Trial counsel testified to his belief that it would be harmful to the defense on several levels:

> There was other bad stuff in there and … it wasn't sexual, but it was physical abuse, pulling by the hair, dragging her around, the child said, "Mom doesn't stop it because she's afraid of [her] boyfriend,' which kind of goes into the theory of what's going on with this dynamic with this family, that there was abuse—physical abuse happening after drinking bouts[.]

¶47 Trial counsel testified that he was concerned about the impact that seeing the video of the child describing physical violence would have on the jury. He also testified that he would have been put in a position of asking the jury to "[b]elieve part of it, don't believe other parts of it" by arguing that J.H. was "telling the truth when she's denying that [Millighan] is sexually assaulting her, but she's lying when she's saying [Millighan is] beating her up." Trial counsel testified that he also was concerned that taking that approach would give the State the "opportunity to really hammer it home" that J.H.'s early denials and

16

nondisclosures were part of "working her way up to making the big disclosures later on."

¶48 The circuit court watched the first forensic interview following the evidentiary hearing and found that "[d]uring the course of that forensic interview, [J.H.] does not disclose any sexual abuse" and "denie[d] inappropriate touching." The court found that J.H. did "disclose physical abuse," one example of which was that J.H. "describe[d] an incident where she is dragged up the stairs by her hair by Mr. Millighan." The court found that J.H.'s demeanor in the first forensic interview was, in the beginning portion, "excitedly juvenile," but during later portions, it became "more somber" as she discussed the physical abuse. The court additionally found that J.H.'s statements about the physical abuse in the interview were credible.

¶49 The circuit court concluded that trial counsel's decision not to put into evidence the first forensic interview based on "[h]is professional judgment that it would have carried lower weight and that it presented risk" was "the kind of strategic choice lawyers have to make during the course of the trial." The court's findings as to trial counsel's conduct and strategy are not clearly erroneous. *See Domke*, 337 Wis. 2d 268, ¶33. We conclude that Millighan has not carried his burden to establish deficient performance.

### C. Claim 5

¶50 For Claim 5, we address Millighan's contention that trial counsel erred by not cross-examining J.H.'s grandmother more extensively. Millighan argues that trial counsel failed to use several significant inconsistencies in J.H.'s grandmother's prior statements to DMCPS to impeach her on the stand and to call

into question her motivations to provide false testimony and to encourage J.H. to make allegations of abuse against her mother and Millighan.

¶51 When questioned about this, trial counsel said his strategy was to "make it seem like Grandma was really driving some of the allegations" and to show she "was kind of interfering and making this into more than it needed to be and then the kid was kind of caught up in it[.]" He said she was a "prickly and combative" witness, and his strategy was to ask questions to provoke her and show the jury she "get[s] angry and get[s] vengeful," which he believed he "got … across" to the jury.

¶52 The circuit court concluded that trial counsel's approach was based on his "appropriate strategic choice" to "display [J.H.'s grandmother] through his questioning as being unpleasant and unlikeable and a challenging witness," and to "reduce[] her credibility by showing her bias through her negative personality." The court, which presided over the trial, concluded that "he effectively achieved [this] during the course of her testimony." The court found that this was "a trial choice," which was to be given deference under the law.

¶53 Again, the court's findings as to trial counsel's conduct and strategy are not clearly erroneous. *See **Domke***, 337 Wis. 2d 268, ¶33. Millighan's claim that trial counsel failed "to properly cross-examine" J.H.'s grandmother is merely an argument that there was a different way to approach the witness, but that alone does not constitute deficient performance.

*D. Claim 7*

¶54    Finally, Millighan argues in Claim 7 that trial counsel was ineffective for not calling Scott Ebert as a witness at trial.  Ebert is a social worker who wrote DMCPS reports deeming J.H.'s allegations unsubstantiated.

¶55    Trial counsel was questioned about why he did not call Ebert, who wrote reports in 2018 concluding that J.H.'s physical and sexual abuse allegations could not be substantiated, as a witness at trial.  Counsel answered that Ebert's report was full of statements by J.H. about violent physical abuse by Millighan: "I took a look at his report and saw that stuff and I was like, 'I'm not going near that.'"   Trial counsel specifically noted two damaging aspects of using the reports: first, the jury would hear that they were "full of accusations that are bad," and second, the jury would be "hearing it from another professional person investigating … that the kid is saying all this stuff's happening.  It makes it stronger that the kid's saying it now in different forms and [to] different people."

¶56    Trial counsel testified that he and Millighan "talked through" the issue of the DMCPS reports before trial.  Millighan, in contrast, testified that trial counsel did not ask him if he agreed with the strategic decision not to use Ebert's DMCPS reports.

¶57    Ebert indicated that he would have been available to testify at trial about his reports.  In terms of being unable to substantiate the allegations of physical and sexual abuse by Millighan, Ebert testified that it did not necessarily mean the abuse did not happen.

¶58    The circuit court found that Ebert's testimony was credible.  In addition, the court found that in September 2018, Ebert wrote an eight-page report

in response to allegations of physical and sexual abuse by Millighan concluding that the allegations were unsubstantiated. The circuit court further found that the second DMCPS report Ebert prepared, following an investigation that spanned November and December 2018, also concluded that "this case is unsubstantiated for sexual abuse to [J.H.] by Terrance Millighan." The report included a statement by J.H. that Millighan had sexually abused her.

¶59 In ruling on this issue, the court found it "[n]oteworthy" that the DMCPS report included the observation that J.H.'s claim that Millighan sexually abused her was "very credible[.]" The court quoted the following excerpt from the report, which relied on Millighan's denials and the lack of physical evidence:

> While [J.H.] is very credible in her chronicling of the abuse, there is not a preponderance of evidence to support [J.H.'s] claim of being sexually abused by Mr. Millighan. The physical examination did not indicate that sexual abuse had taken place, and Mr. Millighan continues to vehemently deny the allegations.

¶60 The circuit court concluded that trial counsel's decision that Ebert's reports were "not helpful to the defense" was based on legitimate strategic concerns. The court explained that trial counsel "knew what Mr. Ebert's testimony was, he had considered the risks of that testimony."

¶61 The circuit court's findings as to trial counsel's conduct and strategy are not clearly erroneous. *See Domke*, 337 Wis. 2d 268, ¶33. Trial counsel did not perform deficiently in not calling Ebert as a witness. *See Whitmore v. State*, 56 Wis. 2d 706, 715, 203 N.W.2d 56 (1973) ("An attorney's strategic decision based upon a reasonable view of the facts not to call a witness is within the realm of an independent professional judgment.").

¶62 "[A] convicted defendant may not simply present a laundry list of mistakes by counsel and expect to be awarded a new trial. A criminal defense attorney's performance is not expected to be flawless." *State v. Thiel*, 2003 WI 111, ¶61, 264 Wis. 2d 571, 665 N.W.2d 305. Indeed, "in most cases errors, even unreasonable errors, will not have a cumulative impact sufficient to undermine confidence in the outcome of the trial[.]" *Id.* To the extent Millighan contends that analyzing his claims one by one "in a vacuum" fails to truly consider the impact that the evidence had on his trial, we are unpersuaded. *See Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976) ("Zero plus zero equals zero."). We conclude that Millighan did not receive ineffective assistance of counsel.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.